invalid." *Id.* at 553.[2] In other words, the Supreme Court realized it had the power to determine the validity of the laws, but did not have the power to perform the legislative function of redistricting the state.

In yet another case, the Kansas Supreme Court had before it the question of whether the statute violated the state constitutional separation of powers. Although not decided under the Republican Guarantee Clause, the court's discussion is instructive. The court explained that "[w]hen a statute is challenged under the constitutional doctrine of separation of powers, the court must search for a usurpation by one department of the powers of another department on the specific facts and circumstances presented. . . . It seems to us that to have a usurpation of powers there must be a significant interference by one department with the operations of another department." *Parcell v. State*, 620 P.2d 834, 836 (Kan. 1980). It explained that there were a number of factors a court could consider in determining whether there has been usurpation of powers by another branch. Two of those factors are relevant to the facts at hand. The first asks what is the essential nature of the power being exercised – i.e., is the power exclusively within the authority of one branch, or is it a power granted to two branches. The second factor is the degree of control by the one branch over the other – i.e., is the one branch exercising a coercive influence or mere cooperative venture. *Id.*

Here, the *Goodridge* court declared that the current marriage laws violated the plaintiffs' state constitutional rights, and then performed a wholly legislative function in redefining marriage as the remedy for the violations. The essential nature of that portion of the decision is legislative. The *Goodridge* decision also was coercive – it ordered that its redefinition of marriage become effective after 180 days. See, e.g., Opinion of the Justices to the Senate, 324 Mass. 746, 85 N.E.2d 761 (1949) (finding the proposed bill expanding the definition of "public highways or bridges" would exceed Legislature's powers because the redefinition would not give to those words "their natural and obvious sense according

---

[2] The Court's decision in *Colegrove* that the matter was nonjusticiable predates its decision in *New York v. United States*.

12

to common and approved usage" as embodied in the state constitution). Plainly, the *Goodridge* court

exceeded its powers and violated the Republican Guaranty Clause.

**2.    The State Constitution grants the Legislature the exclusive authority over transferring subject matter jurisdiction in all cases involving marriage, divorce and alimony.**

A separate basis to enjoin the decision is that the court lacked subject matter jurisdiction to even

hear the case. The Legislature has the exclusive authority over transferring subject matter jurisdiction in

all cases involving marriage, divorce and alimony:

> All causes of marriage, divorce, and alimony, and all appeals from the Judges of probate shall be heard and determined by the Governor and Council, until the Legislature shall, by law, make other provision.

*Mass. Const.* Part 2, ch. III, art. V.   Thus, the Constitution of the Commonwealth explicitly gives the

*political* branches, not the *judicial* branch, authority over jurisdiction in marriage cases.   Unless the

Legislature makes an express transfer of jurisdiction concerning marriage, jurisdiction to determine all

causes of marriage, divorce, and alimony resides with the Governor and Council under art. V.

The Legislature has transferred *some* elements of jurisdiction under this constitutional provision to

the courts, but that jurisdiction is limited and certainly does not encompass the definitional issue raised in

*Goodridge*.   Under the Massachusetts Constitution, the exclusive original subject matter jurisdiction for

deciding cases involving marriage was placed in the Governor and Council, until the Legislature made

other provision.  *Mass. Const.* Part 2, ch. III, art. V.  *See also Mass. Const.* Part 2, ch. II, § 1, art. IV, and

ch. II, § III, art. 1 (creating Council and establishing its powers).   The Legislature, however, has "made

other provision" only in cases involving divorce, alimony, affirmation, and annulment.   The Legislature

has *not* enacted any similar provision to transfer jurisdiction in any other case of marriage such as the

definitional issue in *Goodridge*.

13

The Legislature has enacted only two provisions transferring jurisdiction under article V: one statute relating to divorce and alimony; and one statute relating to affirmation and annulment. First, in 1785 the Legislature passed "An Act for regulating Marriage and Divorce," which extended jurisdiction to the courts on matters of divorce and alimony. The second to last provision of that act provides "Be it therefore enacted by the authority aforesaid, that all questions of divorce and alimony shall be heard and tried by the Supreme Judicial Court holden for the county where the parties live, and that the decree of the same Court shall be final." 1785 Mass. Acts 69. Second, in 1836 the Legislature extended the court's jurisdiction to questions of affirmation or annulment of marriage.[3] The Revised Statutes of 1836 contain, in the statute pertaining to divorce, a provision providing that if the validity of a marriage was doubted, a libel for annulment was to be filed as for divorce. Mass. Rev. Stat. 76, §§ 3-4 (1836). The Supreme Judicial Court's jurisdiction, therefore, encompassed all cases of divorce and alimony and all cases of affirmation or annulment of marriage.

Since that time, however, there has been no expansion of the subject matter jurisdiction of the court. The subject matter jurisdiction of the court in cases of marriage and divorce remains the same as it was in 1836. Statutes have been passed which transfer jurisdiction within the court system itself, but no statute has been passed which provides for any further jurisdiction by the court. Specifically, there has been no statute or provision by the Legislature granting jurisdiction to the court to hear a case which concerns the definition of marriage in the Commonwealth. Neither has there been any general grant of jurisdiction concerning all causes of marriage to any court. Without such a provision, the *Goodridge* case should have been heard by the Governor and Council in accordance with the requirements of the Constitution.

---

[3] Affirmation is the opposite of annulment—a legal declaration that the marriage in question is valid. See MASS. GEN. LAWS ch. 207 § 14 ("If the validity of a marriage is doubted, either party may institute an action for annulling such marriage, or if it is denied or doubted by either party, the other party may institute an action for affirming the marriage.").

14

The Supreme Judicial Court has consistently recognized this constitutional restriction on its jurisdiction in cases of marriage and divorce. It has always emphasized that an express transfer of jurisdiction by the Legislature is necessary before it has authority to hear such cases. *See Loring v. Young*, 239 Mass. 349, 366 (1921) (noting that Massachusetts courts do not have general jurisdiction to decide cases relating to marriage without specific grant of jurisdiction from the Legislature); *Kelley v. Kelley*, 161 Mass. 111, 111 (1894) ("In this Commonwealth, no power exists in any court to pass an order for the payment of alimony *pendente lite*, or of permanent alimony, in a matrimonial cause of any description, except under provisions of statute conferring such power."); *White v. White*, 105 Mass. 325, 327 (1870) (asserting jurisdiction over a case involving divorce and affirmation of marriage only after recognizing the constitutional provision and the necessary statutory transfer of jurisdiction by the Legislature); *see also Bernatavicius v. Bernatavicius*, 259 Mass. 486, 488 (1927); *Adams v. Holt*, 214 Mass. 77, 78 (1913); *Robbins v. Robbins*, 140 Mass. 528, 529-30 (1886).[4] During the last rearrangement of the Massachusetts Constitution, the delegates were explicit in continuing to include Part 2, ch. III, art. V, for "*the words constituted an operative article, still in force, which should remain in the Constitution.*" *Loring*, 239 Mass. at 366 (citing Volume 4 of Debates, pp. 74 to 80) (emphasis added).

Thus, the Massachusetts Constitution and the decisions of the Supreme Judicial Court are clear: a specific grant of jurisdiction from the Legislature is necessary in order for any court to hear "causes"

---

[4] As the court recently noted, this constitutional principle, establishing civil marriage as the special domain of the political branches, carried over from colonial times. *See Gottsegen v. Gottsegen*, 397 Mass. 617, 621 (1986) (noting that the colonial Legislature "vested jurisdiction over all questions of marriage and divorce in the Governor and Council"). Moreover, this constitutional principle of giving original exclusive subject matter jurisdiction to the Governor and Council and the power to delegate that jurisdiction to the Legislature is not an obsolete tradition, but is strongly supported by the unique competence of the democratic branches to deal with complicated questions of marriage and family law. This Court recently acknowledged the Legislature's special competence over marriage law: "Adjustments in the legislation [concerning marriage and family] to reflect these new social and economic realities *must come from the Legislature.*" *Connors v. City of Boston*, 430 Mass. 31, 42-43 (1999) (emphasis added). Accordingly, this constitutional principle is buttressed by Article XXX of the Massachusetts Declaration of Rights, which provides that "the judicial [department] shall never exercise the legislative and executive powers, . . . to the end that it may be a government of laws and not of men." *Mass. Const.* Part 1, art. XXX.

15

involving marriage, divorce, or alimony. The Supreme Judicial Court has interpreted the word "causes" in the marriage provision as being equivalent to "'controversies" or "cases.'" *Sparhawk v. Sparhawk*, 116 Mass 315, 317 (1874). Therefore, any court must have a specific grant of jurisdiction from the Legislature before it can hear any cases or controversies concerning marriage. *Goodridge* is clearly a controversy concerning marriage. It does not, however, fall under any of the categories of controversies over which the courts have jurisdiction. *Goodridge* is neither a controversy concerning divorce and alimony, nor a controversy concerning affirmation or annulment of marriage. *Goodridge* presented a question entirely separate from those over which the court has jurisdiction. *Goodridge* called for a redefinition of marriage. *See* 440 Mass. at 337 ("Certainly our decision today marks a significant change in the definition of marriage as it has been inherited from the common law, and understood by many societies for centuries."). Such a case does not fall within the current jurisdiction of the Supreme Judicial Court. In the absence of legislation conferring jurisdiction upon the courts to hear such controversies, the case, or any future similar case challenging the definition of marriage, must be brought before the Governor and Council acting as a court under a constitutional grant of authority.[5]

Under Part 2, ch. III, art. V, the Governor and Council have exclusive authority over matters pertaining to marriage, "until the Legislature shall, by law, make other provisions." As the case law set forth above demonstrates, this Supreme Judicial Court has long recognized that the courts have *no* jurisdiction over marriage matters except and only to the extent that the Legislature expressly confers such jurisdiction. But the only jurisdiction the Legislature has conferred upon the courts (in reference to

---

[5] This constitutional arrangement does not leave the plaintiffs without redress. Plaintiffs have four legitimate courses of action. First, they could petition the Legislature to pass a statute transferring jurisdiction over matters concerning the definition of marriage to the courts. Second, plaintiffs could petition the Legislature for a change in the substantive law. Third, they could bring their case before the proper tribunal, which in this case would be the Governor and Council. Fourth, plaintiffs could bring a claim in federal court under the United States Constitution. However, the plaintiffs are not allowed to bring a claim that alleges violations of the Massachusetts Constitution, while at the same time asking the court to violate that same Constitution by exercising unauthorized jurisdiction over the subject matter of this case.

16

marriage) relates to divorce, alimony, annulment and affirmation. It is remarkable, therefore, that the majority opinion in *Goodridge* makes no reference to subject matter jurisdiction.[6] It simply assumed such jurisdiction without examination. A unilateral judicial implementation of the judgment in *Goodridge* without fully addressing the jurisdiction issue presented and the court's limited power under Part 2, ch. III, art. V, would be a constitutional affront to the Legislature, the Governor and the People of the Commonwealth.

The Supreme Judicial Court plainly exceeded the powers granted to it under the Massachusetts Constitution – whether by exercising jurisdiction over the case, or by redefining marriage. The court's actions constitute a violation of the federal constitutional guarantee of a republican form of government. As such, plaintiff has demonstrated a likelihood of success on the merits.

## II.    PLAINTIFF, AND ALL CITIZENS OF THE COMMONWEALTH, FACE IRREPARABLE HARM IF THE TRO DOES NOT ISSUE.

Unless this Court grant's Plaintiff's Motion, he and all citizens of the Commonwealth will be irreparably harmed. Plaintiff has a constitutional *guarantee* to a republican form of government. Inherent in this guarantee is that laws that regulate the foundation of the Commonwealth will not be changed or altered outside of the bounds of the grants of authority made in the state Constitution. As a result of the Massachusetts Supreme Judicial Court's actions in exercising jurisdiction over the *Goodridge* case and then in radically re-defining state marriage laws, Plaintiff's guarantee has been violated. Prior to the Massachusetts Supreme Judicial Court's artificially imposed deadline of May 17, 2004, there has never been same-sex marriage in Massachusetts. Indeed, the court itself admitted that marriage in Massachusetts has always been the union of one man and one woman. As of the date of this Motion, no state in our Union has authorized the licensing of same-sex marriages. For over 200 years, marriage has

---

[6] In his dissent, Justice Spina criticized the majority opinion for not recognizing the separation of powers principle embodied in Part 1, art. XXX. See 440 Mass. at 350-51 ("what is at stake in this case is . . . the power of the Legislature to effect social change without interference from the courts, pursuant to art. 30 of the Declaration of Rights") (Spina J., dissenting).

only been between one man and one woman. On May 17, 2004, however, the landscape of marriage will

be drastically altered for the entire country.

The definition of marriage is of vital interest to society. Marriage, as it has existed for thousands

of years, has provided the bedrock foundation to society. The United States Supreme Court has expressed

the importance of marriage:

> [C]ertainly no legislation can be supposed more wholesome and necessary in the founding of a free, self-governing commonwealth . . . than that which seeks to establish it on the basis of the idea of the family, as consisting in and springing from the union for life of one man and one woman in the holy estate of matrimony; the sure foundation of all that is stable and noble in our civilization; the best guaranty of that reverent morality which is the source of all beneficent progress in social and political involvement.

*Murphy v. Ramsey*, 114 U.S. 15, 45 (1885).

Plaintiff has a constitutional guarantee that the definition of marriage will not be altered except by

those expressly granted the authority to do so under the Massachusetts Constitution. Article 4, § 4 of the

United States Constitution, which guarantees the right to all citizens of a republican form of government,

is one of the most fundamental rights guaranteed by the Constitution. Alexander Hamilton explained that

the healthy balance of power between the States and Federal government reduces the "risk of tyranny and

abuse . . . ." *Gregory v. Ashcroft*, 501 U.S. 452, 459 (quoting The Federalist No. 28, pp. 180-81). In the

First Amendment context, the Court has explained that even the denial of rights for a minimal period of

time "unquestionably constitutes irreparable injury." *Elrod v. Burns*, 427 U.S. 347, 373 (1976); *see also*

*Wallace v. Jaffree*, 472 U.S. 38, 44 n.22 (1985); *New York Times Co. v. United States*, 403 U.S. 713

(1971). However, the loss of a republican form of government is even a more egregious loss that the loss

of First Amendment rights.

In *Simon & Schuster*, the Court stated, "'The constitutional right of free expression is . . . intended

to remove governmental restraints from the arena of public discussion, putting the decision as to what

views shall be voiced largely into the hands of each of us . . . in the belief that no other approach would

18

comport with the premise of individual dignity and choice *upon which our political system rests.*" 502 U.S. 105, 116 (1991)(emphasis added) (*quoting Leathers v. Medlock*, 499 U.S. 439, 448-449 (1991)). If free speech rights are important because it is those rights "upon which our political system rests," then surely the political system itself is a valuable right that the abandonment of such system constitutes irreparable harm.

The specific facts of this case highlight the need for a temporary restraining order. On May 17, 2004, clerks throughout the state will begin issuing marriage licenses to same sex couples. It has been reported in the news that some of those clerks will openly disregard a state law that prevents issuance of a marriage license to nonresidents where the home state of those individuals would not permit the marriage. As demonstrated in the San Francisco situation, couples will no doubt flock to Massachusetts to obtain same-sex marriage licenses. Those couples will return to their home states seeking recognition of those licenses. In addition to pressing the issue of whether their home state will recognize an out of state same-sex marriage, there will be an additional issue of whether the license itself is valid since it was issued in violation of Massachusetts law. The widespread legal implications are not speculation -- as reflected by the number of lawsuits around the country already challenging the marriage laws as unconstitutional.

The Vermont Supreme Court in *Baker v. State* explained another concern

> [W]hile the State's prediction of "destabilization" cannot be a ground for denying relief [on the merits], it is not altogether irrelevant. A sudden change in the marriage laws or the statutory benefits traditionally incidental to marriage may have disruptive and unforeseen consequences. Absent legislative guidelines defining the status and rights of same-sex couples, consistent with constitutional requirements, uncertainty and confusion could result.

*Baker v. State*, 744 A.2d 864, 887 (Vt. 1999).

Implementation of the *Goodridge* decision, which constitutes a violation of Plaintiff's federal constitutional guarantee of a republican form of government, will cause Plaintiff, like all citizens of the Commonwealth, to suffer irreparable harm. The temporary restraining order and preliminary injunction

19

should issue.

### III.    BALANCE OF HARDSHIPS WEIGHS IN FAVOR OF GRANTING THE TRO AND IS IN THE PUBLIC INTEREST.

Defendants will not be harmed by the granting of this injunction. Defendants have no right to enforce laws that were created in excess of their jurisdiction. The *Goodridge* decision was issued in direct violation of the separation of powers established by the people of Massachusetts in their constitution. Consequently, Defendants will not be harmed if this Court grants Plaintiff's relief.

On the other hand, if relief is not granted, marriage in Massachusetts and throughout the nation will be in a state of flux and uncertainty. Currently, the process is underway to amend the Massachusetts Constitution to define marriage as only between one man and one woman. If this is passed, then there will be great uncertainty as to the validity of the same-sex marriages that were issued due to the Supreme Judicial Court's unconstitutional actions in redefining "marriage." In addition, it is highly likely that some same sex couples will move out of state, and attempt to enforce their marriages in other states under the Full Faith and Credit Clause of the United States Constitution. This nationwide marital mayhem would be the result of the Massachusetts Supreme Judicial Court violating the republican form of government, and radically changing the state's marriage laws. This Court should find that the balance of harm weighs in favor of granting Plaintiffs' request for a TRO and a Preliminary Injunction.

### CONCLUSION

For the forgoing reasons, plaintiffs respectfully request that this Court temporarily restrain and preliminarily enjoin enforcement of the *Goodridge* decision.

20

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing has been furnished by hand

delivery this 11th day of May, 2004, to the following:

Mr. Charles Lyons
Assistant Corporate Counsel
City of Boston Law Department
One City Hall Plaza
Room 615
Boston MA 02201
(617) 635-2012 - Fax
Attorney for Judy McCarthy

Ms. Judy McCarthy
City Registrar
City of Boston
1 City Hall Plaza, Rm 213
Boston MA 02201
(617) 635-3775 - Fax
To be served for City and Town Clerks 1-350

Mr. Peter Sacks
Office of the Attorney General
1 Ashburton Place
Room 2019
Boston MA 02108
(617) 727-5785 - Fax
Attorney for Supreme Judicial Court for the
State of Massachusetts, Chief Justice Margaret
H. Marshall, Justice Robert J. Cordy, Justice
Judith A. Cowin, Justice John M. Greaney,
Justice Roderick L. Ireland, Justice Martha B.
Sosman, Justice Francis X. Spina, Massachusetts
Department of Public Health, and Christine
Ferguson

(Counsel Signatures Next Page)

21

Chester Darling
 BBO# 114320
CITIZENS FOR THE PRESERVATION
OF CONSTITUTIONAL RIGHTS, INC.
306 Dartmouth Street
Boston, MA 02116
Telephone: (617) 536-1776
Telefacsimile: (978) 470-2219
Local Counsel for Plaintiff

Robert J. Muise*
 MI State Bar No. P62849
 NH State Bar No. 12953
THOMAS MORE LAW CENTER
3475 Plymouth Road, Suite 100
Ann Arbor, MI 48105-2550
Telephone: (734) 827-2001
Telefacsimile: (734) 998-4778
Attorney for Plaintiff
*Subject to admission *pro hac vice*

Stephen M. Crampton*
 MS State Bar No. 9952
Brian Fahling*
 WA State Bar No. 18894
AFA CENTER FOR LAW AND POLICY
100 Parkgate Drive
P.O. Drawer 2440
Tupelo, MS 38803
Telephone: (662) 680-3886
Telefacsimile: (662) 844-4234
Attorneys for Plaintiff
*Subject to admission *pro hac vice*

Mathew D. Staver*
 Florida Bar No. 0701092
(Lead Trial Counsel)
Erik W. Stanley*
 Florida Bar No. 0183504
Anita L. Staver*
 Florida Bar No. 0611131
Joel L. Oster*
 Florida Bar No. 0659746
Rena M. Lindevaldsen*
 Florida Bar No. 0659045
LIBERTY COUNSEL
210 East Palmetto Avenue
Longwood, FL 32750
Telephone: (407) 875-2100
Telefacsimile: (407) 875-0770
Attorneys for Plaintiff
 *Subject to admission *pro hac vice*

22