UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| ROBERT P. LARGESS, REP. MARK J. CARRON, REP. EMILE J. GOFUEN, REP. ROBERT S. HARGRAVES, REP. PETER J. LARKIN, REP. JAMES R. MICELI, REP. PHILIP TRAVIS, SEN. STEVEN C. PANAGIOTAKOS, REP. CHRISTOPHER P. ASSELIN, REP. EDWARD G. CONNOLLY, REP. JOHN A. LEPPER, REP. ELIZABETH A. POIRIER,<br><br>　　　　　Plaintiffs,<br><br>v.<br><br>SUPREME JUDICIAL COURT FOR THE STATE OF MASSACHUSETTS, CHIEF JUSTICE MARGARET MARSHALL, JUSTICE ROBERT J. CORDY, JUSTICE JUDITH A. COWIN, JUSTICE JOHN M. GREANEY, JUSTICE RODERICK L. IRELAND, JUSTICE MARTHA B. SOSMAN, JUSTICE FRANCIS X. SPINA, in their official capacities as Justices of the Supreme Judicial Court of Massachusetts, MASSACHUSETTS DEPARTMENT OF PUBLIC HEALTH, CHRISTINE C. FERGUSON, in her official capacity as Commissioner of the Massachusetts Department of Public Health, JUDY A. McCARTHY, in her official capacity as City Registrar for the City of Boston, CITY AND TOWN CLERKS 1-350,<br><br>　　　　　Defendants. | Civil Action No. 04-10921-JLT |

MEMORANDUM

May 13, 2004

TAURO, J.

This is a civil action challenging the validity of the decision in *Goodridge v. Department of Public Health*,[1] a case in which Defendant Massachusetts Supreme Judicial Court ("Defendant SJC"): (1) declared that the Massachusetts ban on same-sex marriages was unconstitutional,[2] (2) "construe[d the term] civil marriage to mean the voluntary union of two persons as spouses, to the exclusion of all others,"[3] and (3) stayed "[e]ntry of judgment . . . for 180 days to permit the Legislature to take such action as it may deem appropriate . . . ."[4] The stay expires on May 17, 2004.

Plaintiffs[5] seek preliminary and permanent injunctive relief, declaratory judgment, and a temporary restraining order.[6] With regard to preliminary and permanent injunctive relief, Plaintiffs urge this court to "enjoin[] Defendants,[7] . . . their agents, servants and employees and

---

[1] 798 N.E.2d 941 (Mass. 2003).

[2] Id. at 969.

[3] Id.

[4] Id. at 970.

[5] The following are the named Plaintiffs in this action: (1) Robert P. Largess, (2) Rep. Mark J. Carron, (3) Rep. Emile J. Goguen, (4) Rep. Robert S. Hargraves, (5) Rep. Peter J. Larkin, (6) Rep. James R. Miceli, (7) Rep. Philip Travis, (8) Sen. Steven C. Panagiotakos, (9) Rep. Christopher P. Asselin, (10) Rep. Edward G. Connolly, (11) Rep. John A. Lepper, and (12) Rep. Elizabeth A. Poirier.

[6] See Am. Compl. for T.R.O., Prelim. & Permanent Injunctive Relief & Declaratory Relief ("Am. Compl.") at 2.

[7] The following are the named Defendants in this action: (1) Supreme Judicial Court for the State of Massachusetts, (2) Chief Justice Margaret Marshall, (3) Justice Robert J. Cordy, (4) Justice Judith A. Cowin, (5) Justice John M. Greaney, (6) Justice Roderick L. Ireland, (7) Justice Martha B. Sosman, (8) Justice Francis X. Spina, (9) Massachusetts Department of Public Health, (10) Christine C. Ferguson, Commissioner of the Massachusetts Department of Public Health,

those acting in active concert and with actual notice thereof, from enforcing *Goodridge* . . . ."[8] With regard to declaratory judgment, Plaintiffs seek to have this court decree that Defendant SJC violated the United States Constitution by usurping the power of the Massachusetts Legislature, both when it exercised jurisdiction over the *Goodridge* case and when it redefined the concept of marriage in the *Goodridge* opinion.[9] Presently before this court is Plaintiffs' renewed motion for preliminary and permanent injunctive relief, declaratory relief, and a temporary restraining order.[10]

## Background

In *Goodridge*, Defendant SJC addressed the question of "whether, consistent with the Massachusetts Constitution, the Commonwealth may deny the protections, benefits, and obligations conferred by civil marriage to two individuals of the same sex who wish to marry."[11] It "conclude[d] that it may not"[12]: "We declare that barring an individual from the protections,

---

(11) Judy A. McCarthy, City Registrar for the City of Boston, and (12) City and Town Clerks 1-350.

[8] Am. Compl. at 2.

[9] See id.

[10] See Pls.' Renewed Mot. for Declaratory Relief, T.R.O., & Prelim. & Permanent Injunctive Relief ("Pls.' Renewed Mot.").

[11] Goodridge v. Dep't of Pub. Health, 798 N.E.2d 941, 948 (Mass. 2003); see also id. (noting that the issue is "[w]hether the Commonwealth may use its formidable regulatory authority to bar same-sex couples from civil marriage"); id. at 953 ("The larger question is whether . . . government action that bars same-sex couples from civil marriage constitutes a legitimate exercise of the State's authority to regulate conduct, or whether . . . this categorical marriage exclusion violates the Massachusetts Constitution.").

[12] Id. at 948.

3

benefits, and obligations of civil marriage solely because that person would marry a person of the same sex violates the Massachusetts Constitution."[13] But, rather than "striking down the marriage laws," which "no [party] argue[d was] an appropriate form of relief," Defendant SJC "reformulat[ed]" the term civil marriage to mean "the voluntary union of two persons as spouses, to the exclusion of all others."[14] It also stayed "[e]ntry of judgment . . . for 180 days to permit the Legislature to take such action as it may deem appropriate . . . ."[15]

Plaintiffs allege that, on and after May 17, 2004, "Defendants [Judy A.] McCarthy[, the City Registrar for the City of Boston,] and Town and City Clerks 1-350 will be required to issue [and, in fact, plan to issue] marriage licenses to same-sex couples . . . ."[16] In addition, Plaintiffs assert that, on and after May 17, 2004, Defendant Christine C. Ferguson, the Commissioner of Defendant Massachusetts Department of Public Health, and the individual who "is responsible for recording validly-issued marriage licenses[,] . . . will be required to record marriage licenses to same-sex couples . . . ."[17]

On May 11, 2004, Plaintiffs filed with this court their amended complaint for preliminary and permanent injunctive relief, declaratory relief, and a temporary restraining order.[18] Also on

---

[13]Id. at 969.

[14]Id.

[15]Id. at 970.

[16]Am. Compl. at 6.

[17]Id.

[18]See id. at 2. On May 10, 2004, the initial complaint was filed. See Compl. for T.R.O., Prelim. & Permanent Injunctive Relief, & Declaratory Relief.

4

May 11, 2004, Plaintiffs filed a renewed motion for preliminary and permanent injunctive relief, declaratory relief, and a temporary restraining order.[19] Plaintiffs central argument, in both their complaint and their motion, is that "the actions of [Defendant SJC] in exercising jurisdiction over the *Goodridge* case and, separately, in redefining marriage, constitute actions delegated to other branches of the government under the Massachusetts constitution, thereby violating the federal constitutional guarantee to the citizens of Massachusetts [of] a republican form of government."[20] On May 12, 2004, a hearing on Plaintiffs' motion was held.

## Discussion

In deciding whether to grant a preliminary injunction, this court is to weigh the following four factors: "(1) the likelihood of the movant's success on the merits; (2) the potential for irreparable harm to the movant; (3) a balancing of the relevant equities, *i.e.*, 'the hardship to the nonmovant if the restrainer issues as contrasted with the hardship to the movant if interim relief is withheld'; and (4) the effect on the public interest of a grant or denial of the injunction."[21] Yet, "the '*sine qua non* of [the preliminary injunction standard] is whether the plaintiffs are likely to succeed on the merits."[22] Significantly, the abovementioned quadripartite standard is the same

---

[19]Pls.' Renewed Mot. at 1. On May 10, 2004, the initial motion was filed. See Mot. for Prelim. Inj. & T.R.O.

[20]Pls.' Renewed Mot. at 2. "[T]he [United States] Constitution's Guarantee Clause . . . directs the United States to 'guarantee to every State in this Union a Republican Form of Government.'" New York v. United States, 505 U.S. 144, 183 (1992) (quoting U.S. Const. art. IV, § 4).

[21]Gately v. Commonwealth of Massachusetts, 2 F.3d 1221, 1224 (1st Cir. 1993) (quoting Narragansett Indian Tribe v. Guilbert, 934 F.2d 4, 5 (1st Cir. 1991)) (internal citation omitted).

[22]Id. at 1225 (quoting Weaver v. Henderson, 984 F.2d 11, 12 (1st Cir. 1993)) (alteration in original).

test that is to be used in determining whether to grant a temporary restraining order.[23]

At the outset, it is important to emphasize that this court has not been asked to judge, nor will it undertake to judge, "the wisdom of the decision by the *Goodridge* court that denying marriage licenses to same-sex couples violated the state constitutional rights of those individuals."[24] What is more, this court has not been asked to vacate the *Goodridge* decision.[25] Rather, this court has been asked to enjoin enforcement of the *Goodridge* decision on the ground that Defendant SJC violated the Guarantee Clause of the federal Constitution by depriving Plaintiffs of their right to a republican form of government.[26]

Defendants argue that this court lacks subject matter jurisdiction to determine whether the SJC's actions in connection with the *Goodridge* case contravened the federal Constitution's guarantee of a republican form of government.[27] Specifically, Defendants assert *seriatim* that: (1) this court lacks subject matter jurisdiction to review decisions of Defendant SJC,[28] (2) "[b]y virtue of the Eleventh Amendment, a federal court lacks jurisdiction to review state officials'

---

[23] See Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Bishop, 839 F. Supp. 68, 70 (D. Me. 1993).

[24] Mem. of Law in Supp. of Pls.' Renewed Mot. for Declaratory Relief, T.R.O. & Prelim. & Permanent Injunctive Relief ("Pls.' Mem.") at 1.

[25] See id.

[26] See id.

[27] Supreme Judicial Court & Justices' Opp'n to Pls.' Mot. for T.R.O. & in Supp. of Court & Justices' Mot. to Dismiss ("SJC's Opp'n") at 1.

[28] Id.; see Mem. of City of Boston & Judy A. McCarthy in Opp'n to Pls.' Mot. for Prelim. Inj. & T.R.O. ("Mem. of City of Boston") at 2-4.

compliance with state law or to order state officials to comply with state law,"[29] (3) Plaintiffs lack standing, because they cannot identify a cognizable injury that they will suffer as a result of the SJC's actions or an injury that can be redressed by the relief that they have requested,[30] and (4) "Guarantee Clause claims brought by individuals against their state governments are non-justiciable."[31]

This court disagrees and holds that it does have subject matter jurisdiction over this action. First, as has already been pointed out, this court is not reviewing any substantive holding of the SJC with respect to the Massachusetts constitutional issues that were at the heart of the *Goodridge* case. Rather, it is determining whether certain of the SJC's actions in connection with the *Goodridge* case violated the federal Constitution, specifically its Guarantee Clause. Second, although state officials cannot be sued in federal court based on violations of state law,[32] it does not follow that state officials cannot be sued in federal court based on violations of federal law. The Eleventh Amendment does not bar this court from ensuring, via prospective injunctive relief, that the residents of Massachusetts are not deprived of their federally guaranteed right to a republican form of government. Third, the deprivation of the right to a republican form of government, that is, the injury that Plaintiffs have alleged in this case, is sufficient to establish standing. Moreover, there can be no question that the issuance of an order enjoining the

---

[29]SJC's Opp'n at 4; see Pennhurst State Sch. & Hosp. v. Halderman, 465 U.S. 89, 106 (1984).

[30]SJC's Opp'n at 1; see Mem. of City of Boston at 2-4.

[31]SJC's Opp'n at 6 n.7; see Mem. of City of Boston at 6-8.

[32]See Pennhurst State Sch. & Hosp., 465 U.S. at 106.

enforcement of the *Goodridge* decision would serve to redress that injury.[33] And fourth, the United States Supreme Court, in *New York v. United States*, refused to embrace "[t]he view that the Guarantee Clause implicates only non-justiciable political questions . . . ."[34] In fact, the Court recognized that it had previously "suggested that perhaps not all claims under the Guarantee Clause present non[-]justiciable political questions."[35] In view of all of the above, this court will proceed under the assumption that it has subject matter jurisdiction over this action.

The heart of the inquiry as to whether Plaintiffs are entitled to the injunctive relief that they seek is whether they are likely to succeed on the merits.[36] Plaintiffs insist that the *Goodridge* court violated the separation of powers established in the Massachusetts constitution and, therefore, violated the federal Constitution's Guarantee Clause in two ways: (1) in hearing the *Goodridge* case, and (2) in redefining the term marriage.[37] Again, this court disagrees.

First, the SJC did not "lack[] subject matter jurisdiction to . . . hear the [*Goodridge*] case,"[38] even though the case "called for a redefinition of [the term] marriage."[39] To be sure, the

---

[33] At the very least, the issuance of such an order would be the first step in redressing the constitutional injury that Plaintiffs have identified.

[34] 505 U.S. 144, 184 (1992).

[35] Id. at 185 (citing Reynolds v. Sims, 377 U.S. 533, 582 (1964) ("[S]ome questions raised under the Guarantee Clause are non[-]justiciable.")). The Court has also recognized that "[c]ontemporary commentators have . . . suggested that courts should address the merits of [Guarantee Clause] claims, at least in some circumstances." Id.

[36] Gately v. Commonwealth of Massachusetts, 2 F.3d 1221, 1225 (1st Cir. 1993).

[37] Pls.' Mem. at 2.

[38] Id. at 13.

[39] Id. at 16.

Massachusetts Constitution gives the political branches, not the judicial branch, jurisdiction over all cases involving marriage, divorce, and alimony: "All causes of marriage, divorce, and alimony, and all appeals from the Judges of probate shall be heard and determined by the Governor and Council, until the Legislature shall, by law, make other provision."[40] But, as the preceding passage makes clear, the Constitution also provides a mechanism through which the Legislature can transfer subject matter jurisdiction in all cases involving marriage, divorce, and alimony.[41] And, the Legislature has, in fact, transferred subject matter jurisdiction to the judicial branch "in cases involving divorce, alimony, affirmation,[[42]] and annulment."[43]

Implicit in that transfer of jurisdiction to the judicial branch is the transfer of authority to define the term marriage, as that terms appears in the Massachusetts Constitution. There can be no question that, if the judicial branch has jurisdiction over all questions involving divorce, alimony, affirmation, and annulment, it has the authority to determine whether there has been a valid marriage. And, in order to determine whether there has been a valid marriage, the judicial branch must have the authority to interpret, and if necessary, reinterpret, the term marriage. It is, therefore, immaterial that "there has been no statute or provision by the Legislature granting jurisdiction to the court to hear a case which concerns the definition of marriage in the

---

[40]Id. at 13 (citing Mass. Const. pt. 2, ch. III, art. V).

[41]See id.

[42]An affirmation is a legal declaration that the marriage in question is valid. See Mass. Gen. Laws ch. 207, § 14 ("If the validity of a marriage is doubted, either party may institute an action for annulling such marriage, or if it is denied or doubted by either party, the other party may institute an action for affirming the marriage. . . . Upon proof of the validity or nullity of the marriage, it shall be affirmed or declared void by a judgment of the court.").

[43]Pls.' Mem. at 13-14 (citing 1785 Mass. Acts 69; Mass. Rev. Stat. 76, §§ 3, 4 (1836)).

9

Commonwealth."[44] It is similarly immaterial that "there [has not] been any general grant of jurisdiction concerning all causes of marriage to any court."[45] The SJC had the authority to hear the *Goodridge* case.

Second, the SJC did not usurp the power of the Massachusetts Legislature in violation of the Guarantee Clause, when it "reformulat[ed]" the term marriage to mean "the voluntary union of two persons as spouses, to the exclusion of all others."[46] The SJC has the authority to interpret, and reinterpret, if necessary, the term marriage as it appears in the Massachusetts Constitution. The SJC's reformulation of the term marriage in its opinion in the *Goodridge* case was, therefore, not a legislative act. Rather, it was a legitimate exercise of that court's authority and responsibility to decide with finality all issues arising under the Massachusetts Constitution.

Of significance as well is the fact that, after it reformulated the term civil marriage, the SJC announced that the "[e]ntry of judgment shall be stayed for 180 days to permit the Legislature to take such action as it may deem appropriate . . . ."[47] The Legislature was, therefore, provided with an opportunity to act before entry of judgment.

Because "the '*sine qua non* of [both the preliminary injunction and temporary restraining order standard] is whether the plaintiffs are likely to succeed on the merits,"[48] and because this

---

[44] Id. at 14.

[45] Id.

[46] Goodridge v. Dep't of Pub. Health, 798 N.E.2d 941, 969 (Mass. 2003).

[47] Id. at 970.

[48] Gately v. Commonwealth of Massachusetts, 2 F.3d 1221, 1225 (1st Cir. 1993) (quoting Weaver v. Henderson, 984 F.2d 11, 12 (1st Cir. 1993)) (alteration in original).

court has determined that Plaintiffs are unlikely to succeed on the merits, it is unnecessary to consider the remaining elements of the quadripartite injunction standard.

## Conclusion

Plaintiffs seek to have this court declare that Defendant SJC usurped the power of the Massachusetts Legislature and, in so doing, violated the federal Constitution, both when it heard the *Goodridge* case, which called for a redefinition of the term marriage, and when it redefined that term. But, it is the exclusive function of the judicial branch, and ultimately, of Defendant SJC, to decide issues that arise under the Massachusetts Constitution. And, there can be no question that the meaning of the term marriage is an issue that arises under that Constitution. To rule that, through its actions in the *Goodridge* case, Defendant SJC usurped the power of the Massachusetts Legislature and violated the federal Constitution would be to deprive that court of its authority and obligation to consider and resolve, with finality, Massachusetts constitutional issues.

Plaintiffs' motion for preliminary and permanent injunctive relief, declaratory relief, and a temporary restraining order is, therefore, DENIED.

AN ORDER WILL ISSUE.

_____
United States District Judge