IN THE UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| ROBERT P. LARGESS ) <br> ) <br> Plaintiff, ) <br> ) <br> vs. ) <br> ) <br> SUPREME JUDICIAL COURT FOR THE ) <br> STATE OF MASSACHUSETTS; ) <br> CHIEF JUSTICE MARGARET MARSHALL, ) <br> JUSTICE ROBERT J. CORDY, JUSTICE ) <br> JUDITH A. COWIN, JUSTICE JOHN M. ) <br> GREANEY, JUSTICE RODERICK L. IRELAND, ) <br> JUSTICE MARTHA B. SOSMAN, JUSTICE ) <br> FRANCIS X. SPINA, in their official capacities ) <br> as Justices of the Supreme Judicial Court of ) <br> Massachusetts; MASSACHUSETTS ) <br> DEPARTMENT OF PUBLIC HEALTH; ) <br> CHRISTINE C. FERGUSON, in her official ) <br> capacity as Commissioner of the Massachusetts ) <br> Department of Public Health; JUDY A. ) <br> McCARTHY, in her official capacity as City ) <br> Registrar for the City of Boston; CITY AND ) <br> TOWN CLERKS 1-350, ) <br> ) <br> Defendants. ) <br> ) | Case No. |

**OPPOSITION OF PROPOSED INTERVENORS TO PLAINTIFF'S
MOTION FOR TEMPORARY RESTRAINING ORDER
AND PRELIMINARY INJUNCTION**

Prosposed Intervenors,[1] the seven plaintiff couples in <u>Goodridge v. Dep't of Public Health</u>, 440 Mass. 309 (2003) ("<u>Goodridge</u>"), (hereinafter "<u>Goodridge</u> Plaintiffs"), oppose

---

[1] Motion to Intervene as Defendants is being filed with this opposition. The state court plaintiffs in <u>Goodridge</u> include Hillary Goodridge and Julie Goodridge, David Wilson and Robert Compton, Michael Horgan and Edward Balmelli, Maureen Brodoff and Ellen Wade, Gary Chalmers and Richard Linnell, Heidi Norton and Gina Smith, and Gloria Bailey and Linda Davies.

1

Plaintiff Largess's last-minute collateral attack on the Goodridge decision, including his present Motion for a Temporary Restraining Order and Preliminary Injunction, because:

(1) Plaintiff Largess has no standing to collaterally alter the outcome of the Goodridge case, given that he is not and has never been a party;

(2) in comparison to the theoretical, imaginative harm Goodridge will purportedly cause to Largess, injunctive relief will actually harm the Goodridge Plaintiffs, who are presently being denied their state constitutional right to marry;

(3) there is no likelihood that Plaintiff Largess can succeed on the merits, given that the Massachusetts Supreme Judicial Court has already rejected the very same state constitutional arguments on which Largess has predicated his reformulated, federal claim; and

(4) Plaintiff Largess' claim is riddled with other insurmountable jurisdictional and procedural errors.

Consequently, Plaintiff Largess' Motion for a Temporary Restraining Order and Preliminary Injunction should be denied in its entirety.

## I. FACTUAL BACKGROUND.

On November 18, 2003, the Massachusetts Supreme Judicial Court ("SJC") rendered its judgment and opinion in Goodridge, ruling that the exclusion of same-sex couples from marriage violates the liberty and equality provisions of the Massachusetts Constitution.[2]

---

[2] See Goodridge v. Department of Public Health, 440 Mass. 309, 313 (2003) ("Barred access to the protections, benefits, and obligations of civil marriage, a person who enters into an intimate, exclusive union with another of the same sex is arbitrarily deprived of membership in one of our community's most rewarding and cherished institutions. That exclusion is incompatible with the constitutional principles of respect for individual autonomy and equality under law."); Id. at 320, 331-342 (identifying constitutional guarantees of "equality," and the "liberty and due process" provisions of the constitution as the relevant analytical framework and concluding that the "marriage ban does not meet the rational basis test for either due process or equal protection."); Id. at 329 ("The liberty interest in choosing whether and whom to marry would be hollow if the Commonwealth could, without sufficient justification, foreclose an individual from freely choosing the person with whom to share an exclusive commitment in the unique institution of civil marriage."); Id. at 341 ("The marriage ban works a deep and scarring hardship on a very real segment of the community for no rational reason.").

The Proposed Intervenors — the seven same-sex couples in Goodridge (the "Goodridge Plaintiffs") — contested their exclusion from marriage. The SJC stayed its decision for 180 days in order to afford the Legislature an opportunity to conform the existing state statutes to the Goodridge decision. See Opinion of the Justices to the Senate, 440 Mass. 1201, 1204 (2004). When that stay expires on May 17, 2004, the Goodridge Plaintiffs will be unequivocally entitled to obtain marriage licenses from Massachusetts city and town clerks.

Despite the clarity of the SJC's judgment and order in Goodridge,[3] as of this date, there have been three separate actions filed in state court by non-parties to Goodridge seeking to extend the stay or vacate the decision itself. All three of these state court actions have raised the very same issues presented by Plaintiff Largess, except that the arguments presented in the state courts to thwart Goodridge have now been styled as federal claims.

The first collateral attack, which was brought by Plaintiff Largess's counsel[4] on behalf of Largess's colleague at the Catholic Action League, C.J. Doyle, was rejected by The Honorable Justice Roderick Ireland, sitting in the Single Justice Session, on May 3, 2004. See C. Joseph Doyle v. Hillary Goodridge et al., No. SJ-2004-0169 (Sup. Jud. Ct. May 3, 2004) (Memorandum and Order) attached as Exhibit A. Justice Ireland rejected the claim that Goodridge must be stayed to avoid the very harm to the public that Plaintiff Largess is asserting here — that chaos, confusion, and general mayhem will arise if same-sex persons are allowed to wed in

---

[3] In response to an advisory question from the Massachusetts Senate, the Supreme Judicial Court affirmed the holding of Goodridge on February 3, 2004, making clear that a civil union bill, which would have perpetuated the marital bar for same-sex couples, would not satisfy the constitutional mandate of Goodridge. See Opinion of the Justices to the Senate, 440 Mass. 1201, 1204 (2004).

[4] Counsel representing both state court litigant C.J. Doyle and his colleague, Plaintiff Largess, include Chester Darling, Esq. and the attorneys requesting pro hac vice admission from the Thomas More Law Center, the AFA Center for Law and Policy, and Liberty Counsel.

3

Massachusetts in light of the state constitutional amendment process that is underway. Notably, however, that case is currently being appealed. See Exhibit B.

The second collateral attack was brought by members of the Massachusetts Legislature claiming that the SJC lacked subject matter jurisdiction to decide Goodridge based upon Part 2, cl. 3, art. 5 of the Massachusetts Constitution, the very state constitutional provision relied upon by Plaintiff Largess as the predicate for his Section 1983 claim in this action.[5] On May 7, 2004, the Supreme Judicial Court denied the legislators' motion to intervene and vacate Goodridge. The SJC concluded that Goodridge was within the SJC's jurisdiction, notwithstanding the legislators' constitutional claim under Part 2, cl. 3, art. 5. of the Massachusetts Constitution. See May 7, 2004 Order attached as Exhibit C.

The third collateral attack, brought on behalf of Ambassador Ray Flynn and Thomas A. Shields in Suffolk County Superior Court, raised similar claims under Part 2, cl. 3, Art. 5 of the Massachusetts Constitution. The state court litigants' motion to intervene and vacate Goodridge on this basis was denied by The Honorable Judge Troy on May 11, 2004 based upon the SJC's May 7, 2004 Order. See Order of Superior Court dated May 11, 2004 attached as Exhibit D.

The present case represents the fourth collateral attack on Goodridge to date. Plaintiff Largess's requested relief is extraordinary. He is asking this Court to set aside a final order that has arisen in a state court proceeding after over three years of contested litigation. He has never attempted to intervene in the state court action.

Notwithstanding the filing of the present case, at present one, there remains a case pending in state court that raises the very issue presented by Plaintiff Largesse (e.g., the appeal

---

[5] Counsel for Plaintiff Largess, Chester Darling, submitted amicus curiae briefs to both Superior Court and the SJC making this same argument in the Goodridge litigation. See Brief of Amici Curiae, Mass. Citizens Alliances and Mass. Citizens for Marriage, Goodridge, C.A. No. 01-1647-A (Mass. Super. Ct.); same, Goodridge, No. SJC-08860 (Mass. Sup. Jud. Ct.).

4

of Justice Ireland's May 3, 2004 order). More importantly, at present, the SJC has already rejected the state constitutional claims on which Largess' federal claim is based.[6] See Exhibits A, C, and D.

## II. PLAINTIFF LARGESS, AS A NON-PARTY, LACKS STANDING TO CHALLENGE GOODRIDGE IN STATE OR FEDERAL COURT.

Plaintiff is not entitled to a TRO or preliminary injunction because he has no legal standing to pursue the present action at all. In essence, this action constitutes a collateral attack on a decision by the Massachusetts Supreme Judicial Court by a person who was not a party to that action. As Justice Ireland of the SJC noted in denying a similar effort filed before him as Single Justice, "[Petitioner] points to no authority, and I am aware of none, that permits an individual who is not a party in a case to attempt to alter, amend, or stay an appellate court's rescript in the case." See Exhibit A.

Plaintiff's claims fail to overcome either the constitutional or prudential limitations on federal court jurisdiction. McInnis-Misenor v. Maine Med. Ctr., 319 F.3d 63, 68 (1st Cir. 2003) ("The standing inquiry 'involves both constitutional limitations on federal-court jurisdiction and prudential limitations on its exercise.'") (quoting Warth v. Seldin, 422 U.S. 490, 498 (1975)). Although he asserts that an actual controversy exists between the parties, in fact, Plaintiff has not "'alleged such a personal stake in the outcome of the controversy as to warrant invocation of federal-court jurisdiction.'" McInnis-Misenor, 319 F.3d at 67 (quoting Warth, 422 U.S. at 498-99 (internal quotations omitted)). In the words of the Plaintiff himself, the injuries he alleges

---

[6] Implicit in the Goodridge decision was the SJC's conclusion that its determination of Goodridge did not run cause the state court to run afoul of Article XXX of the Massachusetts Constitution. Id. at 338 ("To label the court's role as usurping that of the Legislature is to misunderstand the nature and purpose of judicial review. We owe great deference to the Legislature to decide social and policy issues, but it is the traditional and settled role of courts to decide constitutional issues.")

5

would affect all "citizens of the Commonwealth" equally. Motion for TRO at 2. Because his allegations assert, at most, a generalized harm to the public as a whole, Petitioner has no standing to raise them. McInnis-Misenor, 319 F.3d at 68 ("the suit must present more than 'abstract questions of wide public significance which amount to generalized grievances, pervasively shared and most appropriately addressed in the representative branches.'") (quoting N.H. Right to Life Polit. Action Comm. v. Gardner, 99 F.3d 8, 15 (1st Cir. 1996)). Plaintiff has failed to "demonstrate an 'injury in fact,' which is 'concrete,' 'distinct and palpable,' and 'actual or imminent.'" McConnell v. Fed. Communications Comm'n, 124 S. Ct. 619, 707 (2003) (quoting Whitmore v. Arkansas, 495 U.S. 149, 155, 110 S.Ct. 1717, 109 L.Ed.2d 135 (1990)).[7]

## III. OVERWHELMING HARM TO GOODRIDGE PLAINTIFFS (AND SIMILARLY SITUATED SAME-SEX COUPLES) CANNOT BE OVERLOOKED IN THE FACE OF LARGESS' UNSUPPORTED ALLEGATIONS OF THEORETICAL HARM TO "ALL CITIZENS" IN MASSACHUSETTS.

Plaintiff Largess has curiously concluded that no harm will befall the Goodridge Plaintiffs because his legal analysis is 100% correct — apparently disregarding the fact that the SJC has repeatedly rejected his view of the relevant facts and the applicable law. Notwithstanding his distorted presentation, the applicable standard for injunctive relief requires a balancing of the potential harm that may occur from an improvident grant of temporary or preliminary injunctive relief. Here, the balancing of harms leads to only one conclusion: the Goodridge Plaintiffs will be irreparably harmed by any further delay in the implementation of Goodridge. In contrast, Plaintiff Largess has not, and cannot, substantiate harm for society or for himself personally if Goodridge is implemented as scheduled.

---

[7] Proposed Intervenors do not challenge whether Plaintiff's allegations meet the other elements of the constitutional standing inquiry -- the nexus between the alleged injury and the conduct complained of, and the substantial likelihood that the relief requested will remedy the injury. See McConnell v. Fed. Communications Comm'n, 124 S. Ct. 619, 707 (2003).

6

Plaintiff Largess is asking this Court to deprive the Goodridge Plaintiffs (and similarly situated committed and loving same-sex couples who wish to marry) of their state constitutional right to marry. Yet, Plaintiff Largess himself concedes that "the denial of [constitutional rights] for a minimal period of time "unquestionably constitutes irreparable injury." See Plaintiff's Memorandum of Law in Support of Plaintiff's Motion for Temporary Restraining Order and Preliminary Injunction ("Plaintiff's Memo"), p. 17.

Indeed, the "deprivation of constitutional rights calls for prompt rectification." Watson v. Memphis, 373 U.S. 526, 532 (1963). As recognized by the Supreme Court:

> [A]ll [constitutional] rights [are] present rights; they are not merely hopes to some future enjoyment of some formalistic constitutional promise. The basic guarantees of our Constitution are warrants for the here and now and, unless there is an overwhelmingly compelling reason, they are to be promptly fulfilled.

Id. Likewise, the constitutional right of same-sex couples to marry is a "present right" that is to be "promptly fulfilled" absent an "overwhelmingly compelling reason." Id. Plaintiff Largess has offered no reason — let alone an overwhelmingly compelling reason — for this Court to deny the Goodridge Plaintiffs "benefits accessible only by way of marriage" and "touching nearly every aspect of life and death" indefinitely, until his federal lawsuit runs its course. Goodridge, 440 Mass. at 323. Any TRO or injunctive relief would deny not only the right to marry, but also the safety net that would be afforded by the civil union provision of the state constitutional amendment, should it ever pass.[8]

---

[8] Under Article 48 of the Massachusetts Constitution, before the proposed constitutional amendment can be placed on the ballot, yet another joint session of the Legislature would have to vote in favor of the exact amendment already passed. Unless and until this happens in 2005 or 2006, there is no basis to conclude that the matter will ever reach the ballot. That a proposed amendment has been advanced for further consideration by a subsequent session of the Legislature does not alter the law or the facts upon which the SJC based its decision. At present, the amendment is analogous to a pending bill which still faces many hurdles before enactment.

In contrast, the implementation of Goodridge on May 17, 2004, as scheduled, presents absolutely no harm to the Commonwealth or its citizens, including Plaintiff Largess. Implicit in Goodridge itself is the SJC's conclusion that no grievous wrong will befall the Commonwealth if same-sex couples are afforded their constitutional right to marry on May 17, 2004.

Plaintiff Largess has not identified any specific irreparable harm that will befall him and, "all citizens of the Commonwealth."[9] Plaintiff's Memo at 18. His vague assertions that he has personally suffered the loss of a republican form of government cannot suffice to overcome the comprehensive, personal, tangible injury the Goodridge Plaintiffs would experience were the TRO to enter.

Plaintiff Largess speculates that "national marital mayhem" may arise from the issuance of marriage licenses to same-sex couples, but it is completely the opposite. Any confusion that may occur following the issuance of licenses would result — if at all — from efforts to roll back the constitutional rights extended to Massachusetts same-sex couples under Goodridge or the efforts of other states to deny the validity of Massachusetts marriages for their same-sex residents, in the speculative event any such non-residents were somehow able to marry here.[10]

---

An expression of an intent to change the law is not a change in the law and cannot justify a prolonged suspension of the SJC's constitutionally mandated remedy. Under these circumstances, implementation of the Goodridge remedy, on schedule, does not conflict with the respective powers granted to each branch of the government.

[9] This assertion ignores the "deep and scarring hardship" the exclusion from marriage works on the gay and lesbian citizens of the Commonwealth. Goodridge, 440 Mass., at 341.

[10] Plaintiff Largess has not argued that the state constitution would somehow preclude the institution of civil unions for same-sex couples. Importantly, under the proposed constitutional amendment he references, even if the amendment were ratified, the Commonwealth would still be obligated to provide "entirely the same benefits, protections, rights, privileges and obligations that are afforded to persons married under the law of the commonwealth." That is, even if the constitutional amendment referenced by Plaintiff Largess were ratified two-and-a-half years from now, committed same-sex couples would be entitled to more rights than they presently have; thus, Largess's request to deny all rights until some indeterminate time in the future, underscores the constitutional deprivation at issue here.

8

If the marital ban were never reinstated, if other states elected not to discriminate against their same-sex residents who marry elsewhere, or if no out-of-state same-sex couples are allowed to wed in Massachusetts, neither the Commonwealth nor any other state would have any basis to question the legal status or rights of its citizens. To the extent any confusion may arise from the federal government's or other states' denial of benefits to legally married same-sex couples, that discrimination cannot prevent Massachusetts citizens from enjoying all constitutional rights afforded by state law. See Opinion of the Justices, 440 Mass. at 571 ("That such prejudice exists is not a reason to insist on less than the Constitution requires.").

Simply put, hollow claims of chaos and confusion do not merit a TRO or injunctive relief either of which would effectively extend the stay explicitly ordered by the SJC. Cooper v. Aaron, 358 U.S. 1, 16 (1958) (rejecting delay of Little Rock school desegregation because "the constitutional rights of children not to be discriminated against … can neither be nullified openly and directly by state legislators or state executive or judicial officers, nor nullified indirectly by them through evasive schemes for segregation whether attempted ingeniously or ingenuously.")

The continued deprivation of the Goodridge Plaintiffs constitutional rights clearly outweighs the speculative and remote "injuries" advanced by Plaintiff Largess. He has simply not shown that he, or the citizens of Massachusetts, would be injured by the timely issuance of marriage licenses under Goodridge. Thus, a TRO or injunctive relief is unwarranted.

**IV.   THERE IS NO BASIS FOR PLAINTIFF'S CLAIM THAT THE GOODRIDGE DECISION VIOLATES THE FEDERAL CONSTITUTIONAL GUARANTEE OF A REPUBLICAN FORM OF GOVERNMENT.**

**A. Article IV, § 4 Does Not Provide A Basis To Grant The TRO.**

Plaintiff claims that the Supreme Judicial Court lacked subject matter jurisdiction to hear Goodridge and usurped the power of the Legislature over marriage based on Part 2, cl. 3, art. 5 of

the Massachusetts Constitution, which provides that "[a]ll causes of marriage, divorce, and alimony, and all appeals from the judges of probate shall be heard and determined by the governor and council, until the legislature shall by leave, make other provisions." See Plaintiff's Memo at pp. 6-16. Based on that sole claim, Plaintiff contends that the Goodridge decision is a violation of article IV, § 4 of the U.S. Constitution, which guarantees a "Republican Form of Government."

As an initial matter, there is an open question whether art. IV, § 4 claims are justiciable. See Jones v. State of Alabama, 2001 WL 303533, at *1 (S.D. Ala.). See also Adams v. Clinton, 90 F.Supp.2d 27, 34 (D.D.C. 2000) (Art. IV, § 4 claims have been "treated as nonjusticiable political questions."). Moreover, art. IV, § 4 may not give individuals standing to bring claims. See Professor Laurence H. Tribe American Constitutional Law, 2nd Ed., § 5-23, p. 398 (1988) ("the Supreme Court has denied the guaranty clause of article 4, § 4 confers judicially cognizable rights upon individuals.") (emphasis in original). Even assuming, however, that Plaintiff's action here is not an impermissible, collateral attack on Goodridge, his claim is at most an argument that Massachusetts has allocated its separation of powers in some way that offends the federal constitution. There is nothing in art. IV, § 4 to provide a basis to challenge the Supreme Judicial Court's view of the separation of powers in Massachusetts. As Professor Tribe has explained, art. IV, § 4 recognizes a duty to respect "the state's most fundamental structural choices as to how its people are to participate in their own governance ... And no doubt many options exist, consistent with these basic norms, for implementing the ideals of representative democracy through the requirement of 'republican' form." See Tribe, § 5-23, p. 398. The Guarantee Clause thus provides no grounds to question a state Supreme Court's ruling on the proper role of the three branches of government under the state constitution.

10

**B. There Is No Basis For Plaintiff's Assertion That The Supreme Judicial Court Violated The Separation of Powers Provisions of the Massachusetts Constitution By Hearing and Deciding Goodridge.**

Irrespective of the contours of art. IV, § 4, the plaintiff's asserted basis for a violation of that provision — the Supreme Judicial Court's usurpation of Legislative authority — is groundless. The Supreme Judicial Court on May 7, 2004 rejected an identical argument brought by thirteen state representatives. See Order, Exhibit A. The Court ruled that Part 2, cl. 3, art. 5 was inapplicable to Goodridge. See Order, Ex. A, p. 2 (interpreting Part 2, cl. 3, art. 5 of the Massachusetts Constitution and concluding that "the assertion that the Court did not have subject matter jurisdiction is based on the erroneous premise that the case before us constituted a 'cause[] of marriage, divorce, [or] alimony' within the meaning of the Massachusetts Constitution.").

The SJC also ruled that it had clear subject matter jurisdiction to hear and decide Goodridge under its jurisdiction to review acts of the Legislature and public officials for constitutional soundness. See Order, Ex. A, pp. 2-3 (plaintiffs claims involved an "interpretation of the Constitution and a determination of the validity of our laws," a matter "within the Court's jurisdiction to resolve."). The SJC's Order is fatal to plaintiff's claims here because federal courts look to the authoritative construction of a state's highest court on matters of state law. See Senn v. Tile Layers Protective Union, 301 U.S. 468, 477 (1937) (judgment of state's highest court on construction of state constitution is "conclusive"); In re Jerome P. Troy, 505 F.2d 746 (1st Cir. 1974) (determination of Massachusetts Supreme Judicial court on interpretation of state law binding on Federal Court of Appeals); Redgrave. v. Boston Symphony Orchestra, 855 F.2d 888, 911 (1st Cir. 1988) (deferring to state court's interpretation of state constitutional law);

11

Mitchell v. King, 537 F.2d 385, 388 (10th Cir.) (construction of state constitution by state's highest court is a "matter of state law and the most authoritative construction").[11]

As the SJC ruled, plaintiffs' claims in Goodridge are not a "cause" of marriage as that term appears in Part 2, cl. 3, art. 5. See Ex. A, p. 2. The SJC has explained that "[t]he word 'causes' is evidently here used as equivalent to 'controversies' or 'cases'." See Sparhawk, 116 Mass. at 317. Plaintiffs in Goodridge, however, were not asking that any court marry them, adjudicate that they are married, or annul a marriage. Rather, plaintiffs challenged the constitutionality of a legislative enactment and its enforcement by officials of the Executive Branch. Whether a statutory marriage licensing scheme is unconstitutional because it excludes a class of citizens may concern the subject matter of marriage, but it is not a "cause" of marriage, as that term has been construed for one hundred and thirty years. See Sparhawk 116 Mass. at 317 (1874).

Even if Goodridge did involve a "case" or "controversy" about a particular marriage, Plaintiff Largess fails to distinguish between the proper legislative and judicial roles as articulated by the SJC in Sparhawk. In Sparhawk, the Court ruled that a divorce statute was unconstitutional. Id. at 320. In reaching its result, the Court began by noting that the declaration of divorce is "an investigation of a judicial nature." Id. at 316. The Court went on to examine Part 2, cl. 3, art. 5, together with art. XXX of the Massachusetts Constitution, to conclude that the people intended all "causes" of marriage and divorce to be the exclusive province of the judiciary. Id. at 317. The Court reasoned:

> The 30th article of the Declaration of Rights prefixed to the Constitution declares that in the government of this Commonwealth the legislative department shall never exercise the executive and judicial powers or either of them. The third chapter of the Constitution, entitled "Judiciary Power," contains this article: "All

---

[11]

> causes of marriage, divorce and alimony, and all appeals from the judges of probate, shall be heard and determined by the Governor and Council, until the Legislature shall by law make other provision." The word "causes" is evidently here used as equivalent to "controversies" or "cases;" and the terms, as well as the position of this article in [the judiciary powers section of] the Constitution, manifest the intention of the people, in establishing a frame of government, to commit the hearing and determination of all cases of divorce and probate appeals to the judiciary only. The reason for temporarily entrusting the jurisdiction of these matters to the Governor and Council doubtless was that it had been vested in them under the Province Charter.

Id. (emphasis added). The judicial branch was to have the role of hearing causes of marriage and divorce, and "[t]he Legislature undoubtedly has the power by general laws to specify the grounds and regulate the forms of divorce [and marriage]." Id. at 318.[12] As such, (1) The courts have the power to hear cases or controversies related to specific marriages and divorces. See Sparhawk, supra at 317; (2) The Legislature retains the power to specify the "grounds" for marriage and divorce. Id.; see also Massachusetts Constitution, Part 2, cl. 1, § 1, art. 4 (Legislative authority to make "reasonable orders, laws, statutes, and ordinances."); and (3) The courts determine whether the Legislature's ongoing activity in the realm of marriage and divorce conforms to the requirements of the Massachusetts Constitution. There is no basis for Plaintiff's argument that the Massachusetts Constitution left matters of marriage exclusively in the hands of the Legislature. See also Sparhawk, supra; White, supra at n. 6; Bucknam v. Bucknam, 176

---

[12] Shortly after the enactment of the Massachusetts Constitution, the Legislature passed comprehensive legislation regarding marriage and divorce, and providing for the Supreme Judicial Court to hear and determine marital disputes. See Charles P. Kindregan and Monroe L. Inker Family Law & Practice in 1 Mass. Prac. § 1:6, n. 10 (3d ed. 2002) (discussing St. 1785, c. 69, § 7). See also White v. White, 105 Mass. 325, 327 (1870) (Examining constitutional provision and determining that "[n]o jurisdiction in cases of marriage, any more than in cases of divorce, alimony or appeals from the judges of probate, had been conferred by any law upon the legislature ... They had exercised their power to take away the jurisdiction of the governor and council, and confer it upon another tribunal."). Kindregan and Inker explain that these enactments "set the stage for development of family law by the judiciary within the framework of legislative enactments, a process which has continued in Massachusetts to this day." 1 Mass. Prac. § 1:6 (p. 16).

Mass. 229 (1900); and Bigelow v. Bigelow, 108 Mass. 78 (1871) (cases of the court exercising its power of judicial review of acts of the Legislature in area of marriage and divorce).

Nor is there any support for Plaintiff Largess' claim that Part 2, cl. 3, art. 5 precludes the SJC from changing the common law definition of marriage. See Plaintiff's Memo at p. 9. As the SJC stated in Goodridge, "[t]he history of constitutional law 'is the story of the extension of constitutional rights and protections to people once ignored and excluded,'" and "[t]his statement is as true in the area of civil marriage as in any other area of civil rights." Id. at 339 quoting United States v. Virginia, 518 U.S. 515, 557 (1996). Indeed, the Court noted changes by courts and the legislature to "[t]he common law [that] was exceptionally harsh toward women who became wives," as well as the demise of anti-miscegenation laws. Id. at 339-340.[13]

The Supreme Judicial Court had clear subject matter jurisdiction in Goodridge, not only because Part 2, cl. 3, art. 5 of the Massachusetts Constitution is inapplicable, but also based on the long-established principle of judicial review to rule on the constitutionality of legislative enactments and the acts of public officials. See Order, Exhibit. A, pp. 2-3. That principle is not subject to any reasonable question. As the SJC has recognized:

> It is elementary in constitutional law under the Constitution of this commonwealth that a duty is cast upon the judicial department of government, when the question is properly raised between litigants, to determine whether a public officer is overstepping constitutional bounds and whether statutes duly enacted conform to the fundamental law as expressed in the Constitution. It is a delicate duty, always approached with caution and undertaken with reluctance, but an imperative duty which cannot be escaped.

---

[13] See also McDuffy v. Society of the Exec. Office of Education, 415 Mass. 545, 620 (1993) (SJC interprets Constitution "in accordance with the demands of modern society"); Trefry v. Putnam, 227 Mass. 522, 523 (1917) (stating that the Constitution "was designed by its framers and accepted by the people as an enduring instrument, so comprehensive and general in its terms that a free, intelligent and moral body of citizens might govern themselves under its beneficent provisions through radical changes in social, economic, and industrial conditions.").

14

Horton v. Att'y Gen, 269 Mass. 503, 507 (1930).[14] The import of Plaintiff's argument is that the SJC has never had jurisdiction to decide challenges to any statute or executive action related to the subject of marriage, including laws that "prohibited miscegenation; required court approval for marriage of persons with child support obligations; [or] compelled a pregnant unmarried minor to obtain the consent of both parents before undergoing an abortion." Goodridge, 440 Mass. at n.31.

### IV. PLAINTIFFS' CLAIM FACES OTHER INSURMOUNTABLE JURISDICTIONAL HURDLES.

#### A. The Rooker-Feldman Doctrine Precludes Plaintiff's Section 1983 Claim.

This Court lacks subject matter jurisdiction over the present dispute under the Rooker-Feldman doctrine,[15] which provides that lower federal courts lack subject matter jurisdiction to review decisions of the state courts. Rooker v Fidelity Trust Co., 263 U.S. 413, 414-417 (1923) (recognizing that only the United States Supreme Court has jurisdiction to reverse or modify the

---

[14] See also Bowe v. Secretary of the Comm., 320 Mass. 230, 243-44 (1946) ("The nature of the power of the courts to enforce the provisions of the Constitution of Massachusetts as against a conflicting statute ... is a necessary function, if constitutional provisions are to be the supreme law, and not mere declarations of policy to be disregarded by the Legislature at will."); Moe v. Secretary of Administration & Fin., 382 Mass. 629, 642 (1981) ("without in any way attempting to invade the rightful province of the Legislature to conduct its own business, we have the duty, certainly since Marbury v. Madison to adjudicate a claim that a law and the actions undertaken pursuant to that law conflict with the requirements of the Constitution.") (quoting Colo v. Treasurer & Receiv. Gen., 378 Mass. 550, 553 (1979)(citations omitted)). Moore v. Election Commissioners of Cambridge, 309 Mass. 303, 312 (1941) ("power of deciding on the constitutionality of legal enactments, is one clearly vested in the judicial department"); Sperry & Hutchinson v. McBride, 307 Mass. 408, 416 (1940) ("the question whether a statute is in conflict with the provisions of the Constitution of this Commonwealth is a question on which the decision of our Supreme Judicial Court is final"); The Inhabitants of Norwich v. The County Commissioners of Hampshire, 30 Mass. 60, 61 (1832) ("If an act, purporting to be a statute passed by the legislature, is not warranted by the powers vested in the legislature, it is clear that such act cannot have the force of law; and that it is the duty of the Court so to declare it ...").

[15] The Rooker-Feldman doctrine is jurisdictional in nature and cannot be waived. See, e.g., In re Zambre, 306 B.R. 428, 432 (D. Mass. Bankrt. Ct. 2004).

15

judgment of a state court for errors); District of Columbia Court of Appeals v. Feldman, 460 U.S. 486-87 (1983) (holding that federal district court may not adjudicate federal constitutional claims if such claims are "inextricably intertwined" with a state court judgment). The Rooker-Feldman doctrine prohibits federal district courts from acting as "superappeals" courts sitting in review of state court orders:

> Where a party did not actually present its federal claims in state court, Rooker-Feldman forecloses lower federal court jurisdiction over claims that are inexplicably intertwined with the claims adjudicated in a state court. A federal claim is inextricably intertwined with the state-court claims if the federal claim succeeds only to the extent that the state court wrongly decided the issues before it.

Rosenfeld v. Egy, 346 F.3d 11, 18-19 (2003) (rejecting jurisdiction over Fourth Amendment claim that could only exist if the state probate court wrongly decided to issue the subject restraining order); see also Mandel v. Town of Orleans, 326 F.3d 271 (2003) ("[T]he [Rooker-Feldman] doctrine is widely used by federal courts to prevent end-runs around state judgments."). Because Plaintiff Largess' Section 1983 claim[16] is completely dependent upon, and intertwined with, state constitutional law claims that have already been adjudicated and rejected by the Massachusetts Supreme Judicial Court, this Court may not adjudicate Largess's Section 1983 claim.

---

[16] Section 1983 does not provide litigants (or federal district courts) with a basis to collaterally attack state court proceedings, even where federal challenge alleges that state court's action was unconstitutional. See, e.g., Wilson v. Shumway, 264 F.3d 120, 126 (2001) ("[T]he Rooker-Feldman doctrine is applicable to cases brought under 42 U.S.C. §1983."); Hagerty v. Succession of Clement, 749 F.2d 217, 220 (5th Cir. 1984), cert. denied, 474 U.S. 968 (1985) (recognizing "well-settled rule that a plaintiff may not seek a reversal of a state court judgment simply by casting his complaint in the form of a civil rights action."); South Boston Allied War Veterans Council v. Zobel et al., 830 F. Supp. 643, 647 (D. Mass. 1993) (rejecting restyled Section 1983 claim that challenged constitutionality of state court action under Rooker-Feldman).

In the face of a state constitutional challenge to the Massachusetts Supreme Judicial Court's subject matter jurisdiction to decide and remedy the constitutional deprivation identified in Goodridge, the Supreme Judicial Court has unequivocally held that Part 2, c. III, art. V of the Massachusetts Constitution did not deprive it of jurisdiction or otherwise cause the court to offend state separation of powers principles. See Exhibit C. Yet, Largess's alleged deprivation of "the [federal] guarantee of a republican form of government" cannot be resolved without overturning the SJC's judgment on this very issue. Largess's[17] federal claim is predicated on the allegation that the SJC's decision in Goodridge violated Article III and Part 2, cl. 3, art. 5 of the Massachusetts Constitution. The SJC has expressly refuted that allegation. Id. Consequently, this Court cannot adjudicate the Section 1983 claim without declaring that the state court wrongly decided the issue before it. See Mandel, 326 F.3d at 271 (holding that Rooker-Feldman precludes federal action if "the federal claim succeeds only to the extent that the state court wrongly decided the issues before it.") (citation omitted).

Because this Court cannot grant the relief requested without voiding the decision of the SJC, subject matter jurisdiction to consider Largess's claim is lacking.

**B.    ELEVENTH AMENDMENT BARS PRESENT SUIT.**

The present suit is barred by the Eleventh Amendment because it seeks to enjoin state officers from violating state law. See, e.g., Pennhurst State School and Hospital v. Halderman, 465 U.S. 89, 120 (1984) ("[A] claim that state officials violated state law in carrying out their official responsibilities is a claim against the State that is protected by the Eleventh Amendment.") Here, Plaintiff Largess seeks an injunction alleging that the SJC exceeded its

---

[17] Rooker-Feldman doctrine applies even where the federal court litigant was not a party to the state court litigation. See Rooker, 263 U.S. at 414 (including two defendants who had not been state court parties); see also Angle v. Nevada, 274 F. Supp.2d 1152, 1155 (D. Nev. 2003) (applying Rooker-Feldman to plaintiff who was not party in state court where party directly attacks state court judgment).

authority under state constitutional law. Though no injunction is warranted here, if this Court were to grant the requested relief, the relief would necessarily be based upon the SJC's alleged violation of state law because the Section 1983 claim is solely predicated upon this state constitutional violation. The federal system has no need to ensure the enforcement of state law, and this Court should not allow this suit against state officers based upon state law claims to proceed in federal court.[18] Id.

## CONCLUSION

For the foregoing reasons, the Goodridge Plaintiffs respectfully request that this Court deny Plaintiff Largess's Motion for Temporary Restraining Order and Preliminary Injunction.

Respectfully submitted,

Hillary Goodridge and Julie Goodridge,
David Wilson and Robert Compton,
Michael Horgan and Edward Balmelli,
Maureen Brodoff and Ellen Wade,
Gary Chalmers and Richard Linnell,
Heidi Norton and Gina Smith, and
Gloria Bailey and Linda Davies

By their Counsel,

Mary L. Bonauto, BBO #549967
Bennett H. Klein, BBO #550702
Michele M. Granda, BBO #564413
Gay & Lesbian Advocates & Defenders
30 Winter Street, Suite 800
Boston, MA 02108
617-426-1350

---

[18] Because the injunctive relief would prevent the state from enforcing the obligations of Goodridge on city and town clerks, who perform the ministerial task of issuing marriage licenses under state law, any injunction here would effectively run against the Commonwealth of Massachusetts. Id. at 124 n. 34 (recognizing that Eleventh Amendment may bar relief against a county or other governmental entity if the relief obtained runs against the state).

## Certificate of Service

I, Bennett H. Klein, Esquire, hereby certify on this 11th day of May, 2004, a true and correct copy of the forgoing has been furnished by facsimile to Peter Sacks, Esq., Chester Darling, Esq., Robert Muise, Esq., Mathew D. Staver, Esq., and Stephen Crampton, Esq.

_____
Bennett H. Klein, Esq.