IN THE UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| ROBERT P. LARGESS, REP. MARK J. CARRON, REP. EMILE J. GOGUEN, REP. ROBERT S. HARGRAVES, REP. PETER J. LARKIN, REP. JAMES R. MICELI, REP. PHILIP TRAVIS, SEN. STEVEN C. PANAGIOTAKOS, REP. CHRISTOPHER P. ASSELIN, REP. EDWARD G. CONNOLLY, REP. JOHN A. LEPPER, REP. ELIZABETH A. POIRIER,<br><br>　　　Plaintiffs,<br><br>vs.<br><br>SUPREME JUDICIAL COURT FOR THE STATE OF MASSACHUSETTS; CHIEF JUSTICE MARGARET MARSHALL, JUSTICE ROBERT J. CORDY, JUSTICE JUDITH A. COWIN, JUSTICE JOHN M. GREANEY, JUSTICE RODERICK L. IRELAND, JUSTICE MARTHA B. SOSMAN, JUSTICE FRANCIS X. SPINA, in their official capacities as Justices of the Supreme Judicial Court of Massachusetts; MASSACHUSETTS DEPARTMENT OF PUBLIC HEALTH; CHRISTINE C. FERGUSON, in her official capacity as Commissioner of the Massachusetts Department of Public Health; JUDY A. McCARTHY, in her official capacity as City Registrar for the City of Boston; CITY AND TOWN CLERKS 1-350,<br><br>　　　Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Case No. 04-10921-JLT |

## PLAINTIFFS' MEMO OF LAW IN OPPOSITION TO DEFENDANT MASSACHUSETTS SUPREME JUDICIAL COURT'S MOTION TO DISMISS

I.    **THE SJC'S OPPOSITION TO PLAINTIFFS' MOTION REVEALS A CONFLICT OF INTEREST ON THE PART OF THE ATTORNEY GENERAL AND HIGHLIGHTS THAT THIS CASE INVOLVES A THUS FAR UNSUCCESSFUL EFFORT BY THE EXECUTIVE AND LEGISLATIVE BRANCH TO REIGN IN THE JUDICIAL BRANCH.**

The Attorney General has a conflict of interest that should disqualify him from representation of the Department of Public Health and its Commissioner, which are members of the Executive Branch. *See* Mass. Rules of Professional Conduct 1.7. Although the Opposition Papers purport to represent the SJC, individual Justices, and the Department of Public Health and its Commissioner, the papers themselves, as well as past actions of the Attorney General demonstrate he cannot represent any member of the Executive Branch in this case.

An April 15, 2004, press release from the Executive Department of Massachusetts stated that Governor Romney had specifically requested that the Attorney General seek a stay of the *Goodridge* decision after the Legislature had passed a proposed constitutional amendment that would define marriage as the union of one man and one woman. The Attorney General refused the Governor's request. *See* Ex. A hereto. The Attorney General also declined to appoint a Special Assistant Attorney General to request that stay on behalf of the Governor. *See Id.*. The Governor therefore, has been left without counsel to represent him.[1]

It should come as no surprise then that the Opposing papers filed in this action by the Attorney General vigorously defends the SJC's decision on behalf of the SJC, but also states that the two named Defendants who are members of the Executive Branch – the Department of Public Health

---

[1] The Governor also filed emergency legislation that would have enabled him to seek a stay of the SJC decision in light of the AG's refusal to seek a stay on the Governor's behalf. The Governor was assisted in that legislation by Former SJC Judge Joseph Nolan. Governor Romney explained that the legislation would "allow me to protect the integrity of the constitutional process" and "preserve the right of the citizens to make this decision rather than having it made for them by the Court." *Id.*

and its Commissioner – "take no position on plaintiff's motion" (Opp. Memo at 1, n. 1), ***thus, the Executive Defendants consent to Plaintiffs' Motion***. Essentially, what has happened in Massachusetts is that the SJC blatantly exceeded its judicial powers in creating new law. The Legislature did all that it could in response to that decision – it passed a proposed constitutional amendment, and several of those legislators have brought suit to stop implementation of the decision. The Governor then sought to exercise his powers to seek a stay of that decision, but could not do so because his Attorney General would not represent him. Nor would the Attorney General allow the Governor to have other counsel.

Stated differently, the one branch of the Massachusetts government (Executive) who has authority to immediately halt the *Goodridge* decision is held hostage by an Attorney General who is vigorously defending the actions of the SJC. The checks and balances between the three branches of government are *not* at work in Massachusetts. The judiciary has been left to act wholly unrestrained. If ever there were a case for a Guarantee Clause claim to succeed, this is it.

## II.     THIS CASE IS NOT BARRED BY ROOKER-FELDMAN.

The Rooker-Feldman doctrine is inapplicable in this case because Plaintiffs in this suit were not parties to the state court action in *Goodridge v. Department of Public Health*, 440 Mass. 309 (2003). *See* Mathew D. Staver, *The Abstention Doctrines: Balancing Comity With Federal Court Intervention*, 28 SETON HALL L. REV. 1102, 1125-26 (1998)(stating, "The Rooker- Feldman Abstention Doctrine is inapplicable, however, in cases where the federal plaintiff was not a party to the state court proceeding."). Additionally, the issues in the State Court proceeding were never raised or decided by the State Court. Finally, Rooker-Feldman is inapplicable in Guarantee Clause cases.

### A.     Rooker-Feldman Does Not Apply Because The Parties To This

Plaintiffs' Opposition to Motion to Dismiss - Page 2

**Action Were Not Parties To The State Court Action.**

In order for the Rooker-Feldman doctrine to apply, the parties to the state court action must be the same parties seeking to overturn the state court judgment in federal court. "The Rooker-Feldman doctrine . . . precludes a lower federal court from entertaining a proceeding to reverse or modify a state judgment or decree **to which the assailant was a party**." *Mandel v. Town of Orleans*, 326 F.3d 267, 271 (1st Cir. 2003)(emphasis added). The Supreme Court has refused to apply Rooker-Feldman to bar a federal claim by a plaintiff who was not a party to the state court action in question. *See Johnson v. DeGrandy*, 512 U.S. 997, 1005-06 (1994). The Third Circuit has "found no authority which would extend the Rooker-Feldman doctrine to persons not parties to the proceedings before the state ... court." *Valenti v. Mitchell*, 962 F.2d 288, 297 (3d Cir.1992). The Third Circuit has held in numerous cases that the Rooker-Feldman doctrine does not apply to a federal plaintiff who was not a party to the state court proceeding.

> On several occasions, to be sure, we have declined to apply Rooker-Feldman to bar a federal claim by a non-party to a state action. For example, in *Marks v. Stinson*, 19 F.3d 873, 885 n. 11 (3d Cir.1994), we held that "Rooker-Feldman [does] not bar the district court from hearing the claims of the [ ] plaintiffs because they were not parties to any of the state court proceedings on the matter." Similarly, in *National Railroad Passenger Corp. v. Pennsylvania Public Utility Commission*, 342 F.3d 242, 257 (3d Cir.2003), we noted that "[a] state court order to which [the plaintiff] was not a party cannot be the basis to deny [the plaintiff] its statutory right to a federal forum." *Id.*

*ITT Corp. v. Intelnet Int'l.*, ___ F.3d ____, 2004 WL 877571 at n.19 (3d Cir. Apr. 26, 2004). Other Circuits have similarly held. "The Rooker-Feldman doctrine does not apply to bar a suit in federal court brought by a party that was not a party in the preceding action in state court." *U.S. v. Owens*, 54 F.3d 271, 274 (6th Cir. 1995); *see also Gross v. Weingarten*, 217 F.3d 208, 218 n. 6 (4th Cir.2000) (holding that "Rooker- Feldman does not apply, however, when the person asserting the

claim in the federal suit was not a party to the state proceeding"); *Bennett v. Yoshina*, 140 F.3d 1218, 1224 (9th Cir.1998) (holding that "since the new plaintiffs were not parties to the state suit, their suit is not barred by the Rooker/Feldman doctrine"); *Kamilewicz v. Bank of Boston Corp.*, 100 F.3d 1348, 1351 (7th Cir.1996) (holding that "[w]e, too, have held that the Rooker-Feldman doctrine does not affect suits by or against persons who were not parties to the initial case"); *Roe v. Alabama*, 43 F.3d 574, 580 (11th Cir.1995) (holding that the Rooker-Feldman doctrine did not bar the action because "the plaintiffs in this case [were] not, by the admission of all parties, parties to [the state action]. The Rooker-Feldman doctrine does not apply to such circumstances"); *E.B. v. Verniero*, 119 F.3d 1077, 1092 (3d Cir.1997) ("Rooker-Feldman does not bar individual constitutional claims by persons not parties to the earlier state court litigation."); *Johnson v. Rodriguez*, 226 F.3d 1103, 1109 (10th Cir. 2000) (citing *Johnson v. DeGrandy* and stating, "As *Johnson* teaches, the Rooker-Feldman doctrine should not be applied against non-parties.").

The Plaintiffs in this federal court action were not parties to the state court action in *Goodridge v. Department of Health*. It is impossible for the Rookier-Feldman doctrine to apply to bar non-parties from bringing a federal claim in this case. This is because the Plaintiffs in this case did not have the opportunity to raise the federal claims in the state court action *because they were not parties*. Rooker-Feldman applies to prevent parties in a state court action from appealing an adverse judgment rendered to a federal court. In this case, there is absolutely no basis for the application of Rooker-Feldman because the Plaintiffs in this action are not attempting to appeal anything because they were not parties to the state court action. The federal court is not concerned in this instance with comity and federalism in respecting the state court judgment because the Plaintiffs were not parties to the state court action. They seek to raise federal constitutional rights

independent from the issues raised in the state court judgment.

The case of *Angle v. Legislature of the State of Nevada*, 274 F. Supp. 2d 1152 (D. Nev. 2003), cited by the Defendants to support their Rooker-Feldman argument is inapposite. In that case, the District Court dismissed under Rooker-Feldman because the parties to the federal court action were also parties to the state court action. The District Court stated, "As established by these authorities, a plaintiff in a United States District Court **who was a party to the proceedings in state court** confronts an unequivocal jurisdictional bar." *Id.* at 1155 (emphasis added). The District Court then dismissed the case against the Legislator Plaintiffs because, "they were parties to the state court action and are precluded from proceeding in this court under the Rooker-Feldman doctrine." *Id.*

Because the Plaintiffs in this case were not parties to the *Goodridge* decision, the Rooker-Feldman doctrine does not bar them from bringing their claims in this Court.[2]

**B.    Rooker-Feldman Does Not Apply Because Plaintiffs Raise Issues With This Court That Were Never Raised Nor Decided In The State Court.**

The Rooker-Feldman doctrine does not apply when a Plaintiff is not seeking to overturn the exact holding of the state court. If the issues raised in the federal litigation were never raised in the state court action, then Rooker-Feldman does not bar litigation of those issues in federal court even if the litigation of those issues results in an invalidation of an underlying state court judgment. A direct attack on a state court judgment is barred by Rooker-Feldman only when the federal court

_____

[2] While the District Court in *Angle* also held that the non-legislator plaintiffs were barred by Rooker-Feldman, even though they were not parties to the state court action, the decision to bar the non-legislator plaintiffs under Rooker-Feldman is inapposite for the reasons stated below. The District *Angle* stated with regard to the relief requested by the plaintiffs in that suit, "This court can not provide the relief they request without passing judgment on the highest state court's interpretation of its own constitution." *Angle*, 274 F. Supp. 2d at 1155. Such is not the case in this case.

ruling would require the federal court to overturn the *specific holding* of the state court.[3] This is true

even if the federal court judgment would in effect invalidate the state court's ruling on another point

of law. In this case, the Guarantee Clause issue raised by the Plaintiffs was *never raised in the state*

*court* and was never decided by the state court. In addition, as stated previously, the Plaintiffs in the

federal action were not parties to the state court action. Therefore, Rooker-Feldman does not apply.

In *FOCUS v. Allegheny County Court of Common Pleas*, 75 F.3d 834 (3d Cir. 1996), the

Third Circuit held that when a federal court is asked to directly enjoin a state court judgment,

Rooker-Feldman does not act as a bar to the relief requested if the state court did not rule on the

issue raised in the federal court proceeding. In *FOCUS*, several individuals and groups who were not

parties to a state court proceeding, sued in federal court challenging the constitutionality of a gag

order entered by the state court. *See FOCUS*, 75 F.3d at 836. The Plaintiffs in the federal court action

had attempted to intervene in the state court action to challenge the constitutionality of the state court

gag order, but their motion to intervene was denied. *Id*. at 836-37. The Plaintiffs in the federal court

action even attempted to appeal the denial of the intervention, but were denied by the intermediate

appellate court in Pennsylvania as well as the State Supreme Court. *Id*. After they were denied at the

state court, the Plaintiffs filed a federal court action seeking to overturn the gag order entered by the

federal court on the grounds that it violated their First Amendment rights. *Id*. at 837. The Third

Circuit held that the federal court challenge was not barred by the Rooker-Feldman doctrine because

the federal court Plaintiffs, who were not parties to the state court action, were not seeking to

---

[3] Here, there is no judgment with respect to these Plaintiffs that they are seeking this Court to review. This is the rationale behind the unequivocal precedent mentioned earlier that Rooker-Feldman does not bar a federal claim when the Plaintiffs in the federal suit were not parties to the state court action. This is because there is no state court judgment as to those Plaintiffs for the federal court to review.

overturn the state court judgment.

The Third Circuit stated, "[T]o determine whether Rooker-Feldman bars [plaintiff's] federal suit requires determining exactly what the state court held.... If the relief requested in the federal action requires determining that the state court decision is wrong or would void the state court's ruling, then the issues are inextricably intertwined and the district court has no subject matter jurisdiction to hear the suit." *Id.* at 840 (quoting *Charchenko v. City of Stillwater*, 47 F.3d 981, 983 (8th Cir.1995)). Therefore, if the federal court is asked to invalidate the specific holding of the state court's judgment, then the suit is barred by Rooker-Feldman. The Third Circuit stated, "The [state court] judge did not decide FOCUS' constitutional challenge to the gag orders or any other issue that is a predicate to the claim in the federal proceeding. In short, we have no reason to believe that in order for FOCUS to prevail in federal court, the court must decide 'that the state court decision [on intervention] is wrong.'" *FOCUS*, 75 F.3d at 841. In essence, the state court judgment that would be barred by Rooker-Feldman would be requesting the federal court to review the state court's judgment on denying the Motion to Intervene. Instead, the Plaintiffs were not seeking a direct federal court review of the state courts' judgment in denying their motion to intervene, but were seeking to have the federal court determine the constitutionality of a gag order - *an issue the state courts had not determined in any of their holdings.* Put another way, Rooker-Feldman does not bar litigation in a federal forum of issues that were never raised in the state court even if litigation of those issues int he federal court would cause an invalidation of an underlying state court judgment.

In explaining its holding the Third Circuit stated that the *FOCUS* case was indistinguishable from

> [T]he one we faced in *Marks v. Stinson*, 19 F.3d 873 (3d Cir.1994). In that case,

Plaintiffs' Opposition to Motion to Dismiss - Page 7

some of the plaintiffs had filed petitions with the Philadelphia Court of Common Pleas asking relief on the basis of fraud and alleged constitutional violations in connection with an election. The court refused to entertain their claims asserting that it lacked jurisdiction to do so. We held that a subsequent proceeding in the district court was not barred by the Rooker-Feldman doctrine:

"[T]he court was not barred under Rooker-Feldman from hearing the constitutional and fraud claims of Marks and the Republican State Committee ("RSC") because these claims had not been determined by the state court, nor were they inextricably intertwined with a prior state court decision. Specifically, the court of common pleas dismissed Marks' and the RSC's claims without reaching the merits. Therefore, the district court was not faced with a situation where it was asked to review a determination of the state court.... Here, the district court could (and did) find that Marks' and the RSC's fraud and constitutional claims had merit without also finding that the court of common pleas erred when it dismissed their proceedings. *Marks v. Stinson*, 19 F.3d at 886 n. 11.

*FOCUS*, 75 F.3d at 841.

In this case, the Guarantee Clause issue raised by the Plaintiffs was never raised in the state court proceeding, could not have been raised in the state court proceeding because the Plaintiffs were not parties to the state court proceeding, and was never decided by the state court.[4] The Guarantee Clause issue has never been raised or adjudicated by the Massachusetts state courts. This Court has jurisdiction to decide the Guarantee Clause issue even if the decision results in the invalidation of the underlying judgment in *Goodridge*. The Third Circuit was aware in *FOCUS* that its decision allowing the First Amendment challenge to the gag order could have resulted in the invalidation of the gag order. However, the Third Circuit still ruled that the case could progress and was not barred by Rooker-Feldman. The reasoning is analogous to the fact that the Rooker-Feldman doctrine does

---

[4] The only issue that was raised before the state court by some of the legislators was whether they should be allowed to intervene to argue that the SJC did not have subject matter jurisdiction. The SJC denied intervention and the legislators are not asking this Court whether the SJC's decision on intervention was proper. Indeed, the legislators, as in the *FOCUS* case, are not asking this Court at all to review the decision of the SJC denying their Motion to Intervene.

not apply to bar a constitutional challenge to a state statute when the plaintiff does not seek to

overturn his conviction under that statute. The Fourth Circuit has stated:

> A distinction must be made between actions seeking review of the state court
> decisions themselves and those cases challenging the constitutionality of the process
> by which the state court decisions resulted. For example, in *Feldman*, the Court
> recognized that the plaintiff was allowed to challenge the constitutionality of a rule
> under which he had been denied admission to the bar, but the Court prohibited the
> plaintiff from challenging in federal court, the denial itself. *Feldman*, 460 U.S. at
> 487-88, 103 S.Ct. at 1317-18; *see also Van Harken v. City of Chicago*, 103 F.3d
> 1346, 1349 (7th Cir.1997) (court held that federal plaintiffs' action merely seeking
> a declaration that the process under which parking charges were imposed were
> constitutionally inadequate, and not challenging the judgment in any parking case,
> was not barred by Rooker-Feldman.).

*Jordahl v. Democratic Party of Va.*, 122 F.3d 192, 202 (4th Cir. 1997); *accord Hood v. Keller*, 341

F.3d 593 (6th Cir. 2003)(holding that constitutional challenge to trespass statute was not barred by

Rooker-Feldman because the plaintiff was not seeking to overturn the state court judgment finding

him in violation of the statute). A constitutional challenge to a statute that does not seek to invalidate

a previous state court judgment is not barred by Rooker-Feldman because the plaintiff in such an

action is not seeking direct review of the state court judgment finding him in violation of the statute.

The same is applicable in this case. Plaintiffs are not seeking federal court review of the *Goodridge*

court's holding that same-sex couples should be allowed to marry in Massachusetts. In fact, this

Court can decide the Guarantee Clause issue without ever even once mentioning the specific holding

of the *Goodridge* court.[5] Clearly, Rooker-Feldman does not apply to prohibit Plaintiffs' federal court

---

[5] This is even more the case on Plaintiffs' limited challenge that the SJC was without power
to order the remedy it did in *Goodridge*. This Court, as an alternative form of relief, could invalidate
the remedy of the *Goodridge* court while still leaving intact the *Goodridge* judgment itself. This
clearly would not result in the invalidation of the SJC's specific holding in *Goodridge* on the state
constitutional issue and would place the issue of a proper remedy back in the hands of the Legislature
where it belongs under the separation of powers clearly outlined in the Massachusetts Constitution.

Guarantee Clause action.

### C.     Rooker-Feldman Should Not Apply To Guarantee Clause Challenges.

The Rooker-Feldman doctrine should not apply to Guarantee Clause challenges because applying Rooker-Feldman would render the Guarantee Clause completely ineffective against a state judiciary. If Defendant is successful in its Rooker-Feldman challenge to this action, then a plaintiff could never raise a Guarantee Clause violation by the judiciary of a state out of a misguided belief that holding the judiciary violated the Guarantee Clause would violate Rooker-Feldman. It is important to note that if Plaintiffs were challenging the action of the Governor or the Legislature, the Rooker-Feldman doctrine would not even be at issue. However, because Plaintiffs are challenging the actions of the state judiciary in violating the Guarantee Clause, suddenly the Rooker-Feldman doctrine becomes applicable. The very basis of Plaintiff's Guarantee Clause challenge is that the federal court should step in to this case as a "referee" to ensure that the Massachusetts SJC abides by the Republican form of government guaranteed to all citizens under the federal constitution. It is an absurdity to think that this Court could invalidate the actions of an executive and legislative branch of a state, but could not do the same for a judicial branch of a state. Such a holding would render the Guarantee Clause meaningless against the judiciary while applying against the other two branches of a state. Rooker-Feldman should not even be applicable in this instance and this Court should decide, as a matter of federal constitutional law, that the Massachusetts SJC violated the Guarantee Clause. This action is not barred by Rooker-Feldman.

### III.    THE ELEVENTH AMENDMENT DOES NOT BAR THIS SUIT.

The Eleventh Amendment does not bar suit in federal court against state officials for

prospective injunctive relief when the relief being sought is premised on a federal right. *See Ex parte Young*, 209 U.S. 123 (1908)(holding that the Eleventh Amendment does not bar a federal court injunction to stop state officials from enforcing state laws that violate the United States Constitution). While the Eleventh Amendment does not permit a federal court to exercise jurisdiction over a suit brought against a non-consenting state, an exception to Eleventh Amendment immunity applies when a suit is brought against a state official, in his or her official capacity, for injunctive relief. *See Pennhurst State Sch. and Hosp. v. Halderman*, 465 U.S. 89, 100 (1994). The exception to Eleventh Amendment immunity outlined in *Ex Parte Young* was "based on a determination that an unconstitutional state enactment is void and that any action by a state official that is purportedly authorized by that enactment cannot be taken in an official capacity since the state authorization for such action is a nullity." *Papasan v. Allain* 478 U.S. 265, 276 (1986). The *Young* Court explained that an unconstitutional enactment is "void" and therefore does not "impart to [the officer] any immunity from responsibility to the supreme authority of the United States. *Id.*

The purpose behind *Young* was to provide the federal government with a way to ensure that states were recognizing federal rights for its citizens. "The *Young* doctrine has been accepted as necessary to permit the federal courts to vindicate federal rights and hold state officials responsible to 'the supreme authority of the United States.'" *Pennhurst*, 465 U.S. at 105 (quoting *Young*, 209 U.S. at 160.) Consequently, the Eleventh Amendment does not bar this Court from ensuring that the United States Constitutional guarantee of a republican form of government is not denied to Massachusetts residents by defendants.

The Supreme Court has stated that when "making an officer of the state a party defendant in a suit to enjoin the enforcement of an act alleged to be unconstitutional, . . . such officer must have

some connection with the enforcement of the act, or else it is merely making him a party as a representative of the state and thereby attempting to make the state a party." *Young*, 209 U.S. at 157-158.

> The fact that the state officer by virtue of his office, has *some* connection with the enforcement of the act, is the important and material fact, and whether it arises out of the general law, or is specially created by the act itself, is not material so long as it exists."

*Young*, 209 U.S. at 157; *see also Allied Artists Pictures Corp. v. Rhodes*, 473 F.Supp. 560, 566 (S.D. Ohio 1979). As the court stated in *Rhodes*, explaining this statement of the Supreme Court in the *Young* case, "All that *Young* requires, as Plaintiffs point out, is that the official have some connection with enforcement of the act. *Young* unequivocally concedes that a state officer's connection with the enforcement of the challenged act can 'arise' out of the general law... so long as it exists." *Rhodes*, 473 F. Supp. at 566. Therefore, the Supreme Court specifically acknowledged that if the general laws of the state establish a connection to the enforcement of the law whose constitutionality is in question, Eleventh Amendment immunity does not apply. Because all the Defendants have a connection to the enforcement of the law whose constitutionality is in question, the Eleventh Amendment immunity does not apply.

Defendants suggest that the State Defendants are immune from suit in federal court as the federal court cannot enforce state law against state officials. Such an interpretation of the Eleventh Amendment is inconsistent with the holding of *Pennhurst*, is directly contrary to the rationale behind *Young*, and even if correct, would not deny relief to Plaintiffs. *Pennhurst* stands for the proposition that a federal court can provide prospective, injunctive relief against State officials when citizen's federal rights are at stake. *See id.* at 106. The Court said, "[o]ur decisions repeatedly have

emphasized that the *Young* doctrine rests on the need to promote the vindication of federal rights."
*Id.* at 105. While the Court did state that States cannot be sued in federal court based on violations of state law, this does not mean that States cannot be sued in federal court when state law operates to deny citizens a federal right. In the present case, the Eleventh Amendment does not bar suit against the State as Plaintiffs are seeking prospective injunctive relief that is based on the denial of a federal right - the right to a republican form of government.

The circumstances of this case are rare, and will not lead to a multiplicity of lawsuits. Massachusetts law is abundantly clear that the Legislature has the exclusive authority over transferring subject matter jurisdiction in all cases involving marriage, divorce and alimony:

> All causes of marriage, divorce, and alimony, and all appeals from the Judges of probate shall be heard and determined by the Governor and Council, until the Legislature shall, by law, make other provision.

Mass. Const. Part 2, ch. III, art. V.

Thus, the Constitution of the Commonwealth explicitly gives the political branches, not the judicial branch, authority over jurisdiction in marriage cases. When one branch violates such a clear provision of law, thus denying the citizens a republican form of government, the federal courts must step in to protect the citizens' federal rights. The Defendants' argument provides the perfect example of why this court must step in to ensure that the Massachusetts citizens have a republican form of government. Defendants said, "The essence of plaintiff's claims - the central and indispensable premise of his Guarantee Clause argument - is that the SJC exceeded its powers under the Constitution of the Commonwealth. Under the Eleventh Amendment, that is quintessentially a matter for the SJC alone to adjudicate." *See* State Defendants' Opposition, 5. State Defendants are suggesting that when the SJC violates the law, and rules in matters that it shouldn't, then it should

just police itself. This very scenario illustrates the need for the Guarantee Clause - so that when a state entity denies citizens the right to a republican form of government, the federal government can step in and protect the citizens' federal rights.

Even if Defendants were correct, this would not deny relief to Plaintiffs as Plaintiffs have a claim against the Boston City Registrar and the Massachusetts City and Town Clerks 1-350. There is no question that the Eleventh Amendment does not bar suits against counties and towns, or their officials. *See Mt. Healthy Board of Education v. Doyle*, 429 U.S. 274, 280 (1977)(stating that Eleventh Amendment immunity does not extend to counties and similar municipal corporations). This Court can still give Plaintiffs relief from the acts that denied them a republican form of government under the United States Constitution by enjoining the issuance of marriage licenses by city and town clerks.

## IV.    PLAINTIFFS HAVE STANDING TO MAINTAIN THIS SUIT.

With the flurry of controversy surrounding the historical change in Massachusetts marriage laws that will take place on May 17, it is easy to overlook what this case, at its most basic, is about. This case does *not* ask this Court to second-guess the wisdom of the SJC's ruling that it is unconstitutional to deny same-sex couples the opportunity to marry. Nor does a decision in Plaintiffs' favor require this Court to take any position on the highly politicized and personally charged issue of same-sex marriage. What Plaintiffs ask this Court to do is determine whether the SJC exceeded its powers in expressly redefining marriage. *Significantly, none of the parties (or proposed intervenors) dispute that what the SJC did was to redefine marriage.* In fact, the *Goodridge* decision expressly states that marriage has always been defined as a union of a man and a woman and that with its decision it was "reformulating" the definition of marriage to be the

voluntary union of two persons as spouses. Thus, the only question that this Court need address is whether the SJC performed a legislative function (creating law) when it redefined law.[6] If so, Plaintiffs would be entitled to the relief sought.

Defendants' arguments in opposition to Plaintiffs' request for an order enjoining the *Goodridge* decision are inapposite. Defendants argue that Plaintiffs lack standing to maintain this suit. The law, however, is to the contrary. Robert Largess, as an individual taxpayer and voter in Massachusetts, as well as the Plaintiff Legislators, who are charged with the power of regulating and defining marriage, have standing to maintain this suit.

To establish Article III standing, Plaintiffs must demonstrate that they have a concrete injury that is fairly traceable to the actions of the defendants, and is likely to be redressed by the requested relief. *See Valley Forge Christian Coll. v. Ams. United for Separation of Church & State, Inc.,* 454 U.S. 464, 472 (1982). The Supreme Court in *Baker v. Carr* characterized standing as whether the plaintiffs have "such a personal stake in the outcome of the controversy as to assure that concrete adverseness which sharpens the presentation of issues upon which the court so largely depends for illumination of difficult constitutional questions?" 369 U.S. 186, 206 (1962). Plaintiffs readily satisfy that standard. The concrete injury alleged by Plaintiffs is the deprivation of the right to a republican form of government. Their injury is directly traceable to the actions of the SJC in hearing and deciding *Goodridge*. That injury can be redressed by this Court through issuance of an order enjoining enforcement of *Goodridge*.

The decision in *Adams v. Clinton*, 90 F. Supp.2d 27 (D.D.C. 2000) demonstrates that

---

[6] Although Plaintiffs assert a second claim that the SJC exceeded its powers in even hearing *Goodridge*, this Court need not even reach that issue if it determines that the SJC violated the separation of powers in performing the legislative function of making new law.

individual citizens have standing to seek judicial relief for a violation of the Guarantee Clause. In *Adams*, residents of the District of Columbia brought two separate suits arguing that the existence of the Financial Responsibility and Management Assistance Authority ("Control Board") deprived them of their constitutional right to a republican form of government. In particular, the plaintiffs argued that because Congress had power of "exclusive legislation" over the District of Columbia, Congress could not delegate some of those powers to a body it created and maintained control over. Although the court rejected the claim that Congress had exceeded its power, the court specifically found that the resident plaintiffs had standing.

> [T[he *Adams* plaintiffs have clearly alleged a concrete injury (deprivation of their right to a republican form of local government) that is traceable to the existence of the Control Board, and that would be redressed, at least in part, by its elimination.

90 F. Supp.2d at 34. *See also Baker*, 369 U.S. at 206 (citing line of cases where "citizens", "electors" and "voters" had standing based on facts showing disadvantage to themselves as voters).[7] Massachusetts law also clearly establishes that legislators, as lawmakers, have standing to seek judicial relief for the SJC's having usurped the power of the Legislature. *LaGrant v. Boston Housing Auth.*, 403 Mass. 328, 530 N.E.2d 149 (Mass. 1988) (one branch of government has standing to seek judicial relief for encroachment of that power by another branch).

The history and purpose of the Guarantee Clause further demonstrate that Plaintiffs have standing. Although often forgotten, the power of government resides in the people. In Massachusetts,

---

[7] *But see Schulz v. Jennings*, 198 F.3d 234 (2nd Cir. 1999) (Second Circuit has rejected the argument that the Guarantee Clause confers standing on citizens to challenge state actions that violate their right to a republican form of government). Plaintiffs maintain that the Second Circuit Guarantee Clause case law is wrong. Our position is bolstered by the fact that despite the Supreme Court cases plainly stating that certain Guarantee Clause cases are in fact justiciable, the Second Circuit has continued to summarily dismiss those claims as nonjusticiable.

the citizens of the Commonwealth established in their constitution a separation of powers that delegates to different branches different responsibilities. Each branch of that government must respect that separation of powers and as such is ultimately responsible for protecting the federal guarantee of a republican form of government. In a statement to Virginia's ratifying convention, Patrick Henry stated that "'republicanism" was government by elected representatives who remained accountable to the public through the "unimpeded reversion [of power] back to the people.'" Debra F. Salz, *Discrimination-Prone Initiatives and the Guarantee Clause: A Role for the Supreme Court*, 62 Geo. Wash. L. Rev. 100, 103 (1993). Thomas Jefferson also believed that "'a republic was a government by its citizens *en masse.*'" *Id.* at 104.

The guarantee of a republican form of government would have little meaning if it could not be enforced by the individuals to which it is granted. Indeed, Justice Harlan, in his dissent in *Plessy v. Ferguson* plainly viewed the Guarantee Clause as a protector of individual rights that can and should be enforced by the courts. 163 U.S. 537, 563-64 (1896). In his dissent, Justice Harlan characterized Louisiana's laws that interfered with basic rights based on race, as

> inconsistent with the guaranty given by the constitution to each state of republican form of government, and may be stricken down by congressional action, or by the courts in the discharge of their solemn duty to maintain the supreme law of the land, anything in the constitution or laws of any state to the contrary notwithstanding.

163 U.S. at 563-64. Chief Justice Marshall in *Marbury v. Madison* similarly explained that controversies concerning individual rights are justiciable: "But where a specific duty is assigned by law, and individual rights depend upon the performance of that duty, it seems equally clear that the individual who considers himself injured has a right to resort to the laws of his country for a remedy." 5 U.S. (1 Cranch) 137, 165-66 (1803). The individual citizens and legislators seek in this

suit redress for a violation by the SJC of the republican form of government.[8] At this point in time, with implementation of *Goodridge* only days away, it is clear that if this Court does not act, the assault on plaintiffs fundamental liberty interests will not be vindicated.[9]

Plain and simple, this case is about the individual rights of Massachusetts citizens and legislators to have the separation of powers, as established in the Massachusetts Constitution, respected and enforced. The citizens of the Commonwealth are guaranteed the right to vote for legislators who, in turn, are granted the power to represent them in making laws. "No right is more precious in a free country than that of having a voice in the election of those who make the laws under which, as good citizens, we must live. Other rights, even the most basic, are illusory if the right to vote is undermined." *Wesberry v. Sanders*, 376 U.S. 1 (1964). "The right to vote. . . is constitutionally protected." *Ex parte Yarbrough*, 110 U.S. 651, 663-665 (1884); *Smith v. Allwright*, 321 U.S. 649, 664 (1944). "It is beyond cavil that 'voting is of the most fundamental significance under our constitutional structure.'" *Burdick v. Takushi*, 504 U.S. 428, 433 (1992); *See also Illinois Bd. of Elections v. Socialist Workers Party*, 440 U.S. 173 (1979). "This right to vote is a personal right that is vested in qualified individuals by virtue of their citizenship. It is not a privilege to be granted or denied at the whim or caprice of state officers or state governments." *U. S. v. Penton*, 212

---

[8] *See* Waldrop, *Note: Rousing the Sleeping Giant? Federalism and the Guarantee Clause*, 15 J.L. & Pol. 267, 287-299 (1999)(citing cases recognizing that Guarantee Clause claims are justiciable and should be given serious consideration).

[9] Defendants point out that the SJC expressly rejected, in its May 7, 2004 per curiam order, the argument that it lacked subject matter jurisdiction to hear the *Goodridge* case. That has no bearing on this Court's determination of whether the SJC exceeded its powers in either hearing the case, or in the more limited issue, of whether it performed a legislative function in redefining marriage. Indeed, it comes as no surprise that the SJC would reject each and every challenge to its authority to have issued the *Goodridge* decision. What is telling, however, is that the Executive branch of Massachusetts does not oppose Plaintiffs' Motion for a Temporary Restraining Order.

F. Supp. 193, 202 (M.D. Ala. 1962). The Supreme Court has stated that the "political franchise of voting" is a "fundamental political right, because it is preservative of all rights." *Yick Wo v. Hopkins*, 118 U.S. 356, 370 (1886); *see also Reynolds v. Sims*, 377 U.S. 533, 561-62 (1964).

The SJC, in redefining marriage, deprived the citizens of the Commonwealth of the right to have their duly elected legislators create laws concerning marriage. It is the Legislature, not the courts, that is charged, under the Massachusetts Constitution, with creating and making laws. The SJC, in creating new law through a "reformulation" of marriage to mean the voluntary union of two people as spouses, stripped the Legislature of the power to define marriage.[10] As a result, Massachusetts citizens were deprived of any opportunity for representation by their elected legislators on the important policy decision of what is marriage. *See, e.g., Wayman v. Southard*, 23 U.S. 1, 46 (1825) (C.J., Marshall) (the "difference between the departments undoubtedly is, that the legislature makes, the executive executes and the judiciary construes the law").

In addition, the *Goodridge* decision deprived Massachusetts citizens of their state constitutional right to reverse the *Goodridge* decision through a constitutional amendment. *See* Mass. Const. Amend. Art. 48; *see also Mazzone v. Attorney Gen.*, 432 Mass. 515, 528 (2000) (acknowledging that citizens could overrule a decision of the SJC by constitutional amendment). This right, which is both an individual and a public right, confers standing in this matter. In this case, however, the SJC ruling requiring implementation of its case on May 17 did not grant the voters sufficient time to reverse the decision, even though the amendment process has already begun.

The SJC has long recognized that the right of a citizen to participate in the political process, which includes the process to amend the Commonwealth's Constitution to reverse a decision of the SJC, is fundamental. *See, e.g., Attorney General v. Suffolk County Apportionment Comm'rs*, 224

---

[10] Even the Vermont Supreme Court in *Baker v. State* recognized that it was without the power to fashion new law to remedy what it determined was unconstitutional marriage laws. 744 A.2d 864, 886-88 (Vt. 1999) ("We do not purport to infringe upon the prerogatives of the Legislature to craft an appropriate means of addressing this constitutional mandate . . . .").

Mass. 598, 601 (1916) ("The right to vote is a fundamental personal and political right"). Similarly, the SJC has long recognized the right of a private citizen to maintain an action before the SJC on the ground that the question at issue was "one of public right," and that the object of the action was "to procure the enforcement of a public duty," with the people as a whole being "regarded as the real party in interest." *Brewster v. Sherman*, 195 Mass. 222, 224 (1907) (permitting a single petitioner to maintain an action for a writ of mandamus to correct an error of the registrars of voters in counting a ballot); *Brooks v. Secretary of the Commonwealth*, 257 Mass. 91 (1926) (holding that petitioner had standing to seek the enforcement of a public duty by an officer with respect to a public right in which the voters at large have an interest); *Sears v. Treasurer & Receiver Gen.*, 327 Mass. 310 (1951) (holding that citizens of the Commonwealth had standing by virtue of their interest in the execution of the laws to compel respondents to refrain from paying out any money or taking any action under a purported law proposed by initiative).

In cases involving challenges related to the processes prescribed by the Commonwealth's Constitution, the SJC has conferred standing to persons who were citizens and qualified voters. *See, e.g., Cohen v. Attorney Gen.*, 354 Mass. 384 (1968) (holding that qualified voters had standing to challenge proposed initiative amendment); *Massachusetts Teachers Ass'n v. Secretary of the Commonwealth*, 384 Mass. 209 (1981); *Tax Equity Alliance for Mass, Inc. v. Commissioner of Revenue*, 401 Mass. 310, 313-14 (1987). These decisions stand for the proposition that citizens, who are qualified voters, have a real, concrete and cognizable interest in the constitutional processes in which they have a right to participate. *See Vansickle v. Shanahan*, 511 P.2d 223, 239 (Kan. 1973) (stating, "Were the power of judging joined with the legislative, the life and liberty of the subject would be exposed to arbitrary control, for the judge would be the legislator."). The SJC in hearing the *Goodridge* case and in redefining marriage violated the most basic individual liberty – that of the republican form of government. That Plaintiffs have standing to seek redress for that injury cannot be questioned: they have suffered a concrete injury (deprivation of their republican form of government) that is directly traceable to the SJC decision that is redressable by this Court.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing has been furnished by

Facsimile and U.S. Mail delivery this 12th day of May, 2004, to the following:

Mr. Charles Lyons
Assistant Corporate Counsel
City of Boston Law Department
One City Hall Plaza
Room 615
Boston MA 02201
(617) 635-2012 - Fax
Attorney for Judy McCarthy

Ms. Judy McCarthy
City Registrar
City of Boston
1 City Hall Plaza, Rm 213
Boston MA 02201
(617) 635-3775 - Fax
To be served for City and Town Clerks 1-350

Mr. Peter Sacks
Office of the Attorney General
1 Ashburton Place
Room 2019
Boston MA 02108
(617) 727-5785 - Fax
Attorney for Supreme Judicial Court for the State of Massachusetts, Chief Justice Margaret H. Marshall, Justice Robert J. Cordy, Justice Judith A. Cowin, Justice John M. Greaney, Justice Roderick L. Ireland, Justice Martha B. Sosman, Justice Francis X. Spina, Massachusetts Department of Public Health, and Christine Ferguson

(Counsel signatures next page)

Plaintiffs' Opposition to Motion to Dismiss - Page 21

Chester Darling _for_
BBO# 114320
CITIZENS FOR THE PRESERVATION
OF CONSTITUTIONAL RIGHTS, INC.
306 Dartmouth Street
Boston, MA 02116
Telephone: (617) 536-1776
Telefacsimile: (978) 470-2219
Local Counsel for Plaintiffs

Robert J. Muise*
 MI State Bar No. P62849
 NH State Bar No. 12953
THOMAS MORE LAW CENTER
3475 Plymouth Road, Suite 100
Ann Arbor, MI 48105-2550
Telephone: (734) 827-2001
Telefacsimile: (734) 998-4778
Attorney for Plaintiffs
*Subject to admission _pro hac vice_

Stephen M. Crampton*
 MS State Bar No. 9952
Brian Fahling*
 WA State Bar No. 18894
AFA CENTER FOR LAW AND POLICY
100 Parkgate Drive
P.O. Drawer 2440
Tupelo, MS 38803
Telephone: (662) 680-3886
Telefacsimile: (662) 844-4234
Attorneys for Plaintiffs
*Subject to admission _pro hac vice_

Mathew D. Staver*
 Florida Bar No. 0701092
(Lead Trial Counsel)
Erik W. Stanley*
 Florida Bar No. 0183504
Anita L. Staver*
 Florida Bar No. 0611131
Joel L. Oster*
 Florida Bar No. 0659746
Rena M. Lindevaldsen*
 Florida Bar No. 0659045
LIBERTY COUNSEL
210 East Palmetto Avenue
Longwood, FL 32750
Telephone: (407) 875-2100
Telefacsimile: (407) 875-0770
Attorneys for Plaintiffs
 *Subject to admission _pro hac vice_



THE COMMONWEALTH OF MASSACHUSETTS
EXECUTIVE DEPARTMENT
STATE HOUSE  •  BOSTON, MA 02133
(617) 725-4000

MITT ROMNEY
GOVERNOR

KERRY HEALEY
LIEUTENANT GOVERNOR

**FOR IMMEDIATE RELEASE:**
April 15, 2004

**CONTACT:**
Shawn Feddeman
(617) 725-4025

### ROMNEY FILES EMERGENCY BILL TO SEEK GOODRIDGE DECISION STAY
*Former SJC Justice Nolan Sees "Compelling Legal Reasons" for Stay*

Governor Mitt Romney today filed emergency legislation that would enable him to seek a stay of the Supreme Judicial Court's decision authorizing gay marriage in Massachusetts.

Romney said the legislation is necessary because, following passage of a proposed constitutional amendment defining marriage as the union of a man and woman, the Attorney General declined to seek a stay of the Court's decision, and he also declined to appoint a Special Assistant Attorney General to request the stay on the Governor's behalf.

Former Supreme Judicial Court Judge Joseph R. Nolan, in a separate letter to legislators, said he has reviewed the case of *Goodridge v. Department of Public Health* and believes "there are compelling legal reasons" for the court to issue a stay.

"The historic action taken by the Legislature in response to the *Goodridge* decision represents a significant change in circumstances in this case.  This change in circumstances cannot be ignored," Nolan said.

Nolan, who served on the SJC from 1981 until his retirement in 1995, has agreed to the Governor's request to assist in the effort to seek a stay.

Romney said the legislation "will allow me to protect the integrity of the constitutional process" and "preserve the right of the citizens to make this decision rather than having it made for them by the Court."

Meanwhile, the Registry of Vital Records and Statistics will today release a letter to city and town clerks notifying them of regional information sessions that will provide a forum for instructions on how to proceed with gay marriage should the Governor be unsuccessful in obtaining a stay of the *Goodridge* decision.

The Court stayed its original decision issued in November for 180 days to allow the Legislature to act "as they may deem appropriate."  Subsequently, the Legislature voted in favor of a proposed constitutional amendment that directly contradicts the Court's decision by defining marriage as the union of a man and woman.

Under Massachusetts General Law, Chapter 12, Section 3, the Attorney General has control over the conduct of litigation involving the Commonwealth, which includes the power to make policy determinations regarding legal strategy.

The Governor's bill would carve a narrow exception to this law for the purpose of allowing the Executive Branch to appear before the SJC in the *Goodridge* case to request a further stay of the entry of judgment.

"I have introduced legislation to change the law, in just this one case, so that I can put the argument for a stay before the court directly, and ask them to respect the Legislature's action, the constitutional process and the will of the people," said Romney.

###