

REV. JOHN C. RANKIN, PRESIDENT

750 MAIN STREET, SUITE 1300 | HARTFORD, CONNECTICUT 06103
860.246.0099 | 860.246.9599 *fax* | www.teihartford.com | jcr@teihartford.com

May 13, 2004

Honorable Joseph Tauro
United States District Court
1 Courthouse Way
Boston, MA 02210

re: Case No. 04-10921-JLT

Dear Honorable Justice Tauro:

By the time you receive this Friday morning, May 14, you are scheduled to have ruled in the above mentioned case re: a temporary restraining order on *Goodridge*.

I am not an attorney, and at this late date, I do not have the time to learn how to properly file an official complaint also asking for a stay of the *Goodridge* decision; or if there were time, to file a motion to intervene.

By the same token, I do realize you have certain prerogatives to waive the rules when needful, or allow me to attend to them promptly if my complaint has merit. Whether as an adjunct to Case 04-10921-JLT if declaratory relief is given, or as a separate complaint otherwise, I ask for your consideration of my concerns that *Goodridge* be stayed prior to its enforcement on May 17.

Here is my complaint:

As a citizen of these United States, and as a minister ordained in Massachusetts, **I appeal to you to issue a stay against the Commonwealth of Massachusetts, prohibiting them from legalizing same-sex marriage on May 17, 2004**, as ordered by the November 17, 2003 *Goodridge* decision of the Massachusetts Supreme Judicial Court.

And then, in proper course, I ask that you schedule a hearing so that I may argue my case, pro se, and as the Commonwealth argues its case.

**A Federal Issue**

This is an issue that goes to the core of our national well-being. Namely, the legalization of same-sex marriage would undercut our unique basis in unalienable rights given by the Creator,

and as a result, it would speed the decay of First Amendment liberties for all citizens, beginning with religious liberty, not only in Massachusetts, but in the nation as a whole. We are a nation united not by heredity or privilege, but by the powerful idea of unalienable rights, and that idea, and hence the union of the States, is now in jeopardy.

**A Question Concerning the Definition of Unalienable Rights, and Civil Rights, and Whether New Rights May Be Invented**

In the *Goodridge* decision, the language of Chief Justice Margaret Marshall purposes to define same-sex marriage as a constitutionally protected civil "right," and also, syntactically as a "fundamental right."

Then, in Justice John Greaney's concurring opinion, same-sex marriage is directly linked with the language of Part the First, Article 1 of the Massachusetts Constitution, quoting it accordingly, which syntactically includes the Article's language of "unalienable rights," and along with the Chief Justice, specifically itemizes such rights language as choice, property and happiness. This linkage will not go unnoticed in future litigation concerning an expansive view of same-sex marriage and homosexual rights.

Yet too, in Chief Justice Marshall's majority opinion, she also states that the government creates civil marriage as a "civil right," and it does so as a "wholly secular institution." This presents a future and nationally encompassing conflict, as *Goodridge* creates within itself a contradiction of terms.

Namely, "unalienable rights" are those rights which are above the power of human government to define, give or take away. In the grand experiment of these United States, the only valid human government is that which acknowledges these rights to begin with – life, liberty, property and thus the power to pursue happiness. Human government may not tinker with these rights. Since unalienable rights come from the Creator, how then does a wholly secular institution relate to such an idea? *Goodridge* does so by inventing a new civil right, and shrewdly inviting it into the domain of unalienable rights. In so doing, unalienable rights are compromised, they become no longer unalienable but subject to political considerations, and hence, their universal protection for all peoples are jeopardized.

A torrent of civil rights chaos in the nation beckons. Other states will not only seek the same, but once something which is not an unalienable right is classified as such, then other new "rights" will clamor for the same attention and elevation.

There are four salient points of historical fact:

1. In these United States, the civil rights which we all enjoy are rooted originally in the Declaration of Independence, in the "Laws of Nature and of Nature's God," as we are endowed by our "Creator with certain unalienable rights, that among these are life, liberty and the pursuit of happiness." In Part the First of the Massachusetts Constitution, penned shortly thereafter, the linkage of unalienable rights with the Creator is likewise in place; and in the

Fifth and Fourteenth Amendments to the U.S. Constitution, no person may be deprived of "life, liberty, or property," without due process of law. These Amendments are dependent on the assumptions of the Declaration. And their use of "property," consistent with John Locke's antecedent language, equals the legal embodiment of Thomas Jefferson's philosophic words, "pursuit of happiness."

2. The unique source for unalienable rights, the Creator, is a reference to the God of the Bible. When our founding fathers sought moral justification to dissolve the political bonds between the Colonies and Great Britain, they did not appeal to any human authority, but to the one Source that even King George III could not argue with. No pagan deity or intrinsically secular concept in history has ever defined or extended any rights to the people which are above the power of human government to redefine or abrogate. And since the amorphous deity of Enlightenment deism is by definition unconcerned with human affairs, unalienable rights are not located there either. Only the God identified in the biblical Genesis defines and gives these rights as unalienable, and this is the Creator to whom the signers of the Declaration appealed.

3. In the biblical order of creation, in the goodness of the social order prior to the brokenness of human trust, the Creator defines marriage as the union of one man and one woman. There is no explicit presence or even any implicit possibility of homosexual unions. Thus, the Source for our unalienable rights also gives us the original definition of marriage, one affirmed across cultures and the millennia as the ideal.

4. In human history, no society rooted in the approval of homosexuality has ever conceived of, or produced unalienable rights for the larger social order.

In my own public dialogue with the president of the American Civil Liberties Union (and we both agree on the definition of "unalienable"), as well as with a wide range of other interlocutors who would challenge my theological and political positions, this historical argument has not been successfully contested.

And this is an argument from history – with no denominational, doctrinal or institutional church polity issues in view. Namely, of the 56 signers of the Declaration of Independence, 55 were Protestant and one was Roman Catholic. They accomplished something unique in the history of the modern nation-state – they did not impose their own religious creeds upon the nation, which is to say, they called for no national religion in the particularistic or exclusionary sense. Rather, they appealed to a fully Christian and pre-Christian, to a fully Jewish and pre-Jewish, to a fully human understanding of the good Creator. Thus, as Article VI of the U.S. Constitution frees office holders from any religious test, so too the First Amendment predicates the liberty of speech, press, assembly and redress of grievances on the prior reality of religious liberty.

These unalienable rights of life, liberty and property, and hence the power to pursue happiness within the common polity, are extended to all people equally, regardless of how much their religious beliefs and/or sexual identities may differ from those of the founding fathers, or from any of us who affirm marriage as one man and one woman. Now, the signers of the Declaration did not fully measure up to the Source for unalienable rights, as the abolition of slavery and

advent of women's suffrage was still many years away. But in appealing to the Source for unalienable rights, they made themselves and the new nation ultimately accountable to an equality assumed in the biblical order of creation. Same-sex marriage, in order to equate itself with this civil rights tradition, must root itself likewise, but it cannot.

So, while there is no need for someone to believe in the God of the Bible, or in any god, or in biblical sexual mores in order to deserve unalienable rights, a fundamental conflict still remains. Namely, same-sex marriage as a "civil right" cannot be rooted in the unalienable rights given by the Creator. And especially, if the *Goodridge* decision's linkage of same-sex marriage with the domain of unalienable rights stands, the conflict is far more serious yet, unalienable rights loses its meaning, and the United States loses its history.

Now, and importantly, same-sex marriage advocates have the unalienable right to liberty, and thus the freedom to argue their case, and win it by means of the consent of the governed if possible. However, they cannot simply up front declare same-sex marriage to be a fundamental or civil or unalienable right. An honest and proper course is to acknowledge that same-sex marriage is historically a novel idea, less than a decade old in practical terms, and is unprecedented in the history and language of civil rights.

This debate brings us to a historical crossroads on the future of the nation, for whereas *Goodridge* acknowledges that the definition of civil marriage is at stake, and it is, it is far deeper than that. The definition of unalienable rights, and hence civil rights, is the most fundamental concern. Therefore, same-sex marriage advocates need to address four questions:

1. Are civil rights being redefined?
2. If so, why?
3. If so, what is the new basis for these rights?
4. What are the consequences?

**It is Either Unalienable Rights or "Might Makes Right"**

I have posed these questions widely among lead skeptics of my perspective, and I cannot find one same-sex marriage advocate yet willing to address them. The reason is simple: It is either unalienable rights given by the Creator, or else it is humanly defined rights, where those in political power define the rights or lack thereof for those under them, with no appeal to transcendent rights possible. Or to sum it up more baldy: It is either unalienable rights, or "might makes right." When it is "might makes right," then all people not in political power are in danger, homosexual persons equally so.

**The Threat to Religious Liberty**

Religious liberty is the predicate for all subsequent liberties identified in the First Amendment, including political and economic. Without the freedom to believe (whether religious or secular in nature), we cannot speak what we believe, publish what we believe, assemble on the basis of our beliefs, or redress the government based on our beliefs.

As we observe the politics of England, Sweden, Belgium, Spain, Ireland and Canada, legal actions are being taken already, or contemplated, against clergy who appeal to the Bible or their religious traditions to disagree with homosexuality. They are being denied their liberties of religion, speech, press and assembly, and in Canada, ordinary citizens have already suffered legally imposed financial penalties for saying no to homosexuality. Now, despite language to the contrary in *Goodridge*, will religious liberty still be in force in Massachusetts if it becomes the law on May 17? And can this trend be isolated in Massachusetts, or in other jurisdictions where same-sex marriage is being advanced, or will it relentlessly expand outward?

For example, let's say a homosexual couple approaches a Jewish Rabbi, Roman Catholic Priest or Protestant Minister, and asks to be married. If the clergy person involved says no, according to his or her religious convictions, what would prevent the homosexual couple from filing a lawsuit in Superior Court, claiming that they were being denied their "fundamental civil right" or indeed, being denied an "unalienable right?" Would religious liberty be more or less fundamental, and if same-sex marriage is "unalienable," then no human action has the right to block it in any capacity without legal penalty. Could not that rabbi, priest or minister be liable to a lawsuit seeking civil penalties, loss of privilege to perform legal wedding ceremonies for heterosexual couples, and even revocation of their synagogue or church's tax exempt status?

If we consider how the Massachusetts Equal Rights Amendment was set forth specifically against a backdrop that disavowed any linkage to homosexual marriage, and if we consider how *Goodridge* dismissed that concern out of hand while using its language to justify same-sex marriage, we see that such a concern for religious liberty is sober-minded.

**Summation**

In the name of redefining civil marriage, the *Goodridge* decision of the Massachusetts Supreme Judicial Court does something even more precipitous regarding our national well being.

1. *Goodridge* redefines our national basis for unalienable rights, effectively dispensing with the historical Source for and nature of our unalienable rights, and hence, our true civil rights;
2. *Goodridge* thus invites further new definitions for civil rights which have no transcendent appeal;
3. *Goodridge*'s new definition of civil rights thus descends into a contest of "might makes right" according to who holds political power in a given season; and thus
4. *Goodridge* makes casualty of the First Amendment, beginning with religious liberty.

**Appeal**

The Commonwealth of Massachusetts and its Supreme Judicial Court must be enjoined to stop this and cognate social injuries from coming to pass, so that the argument concerning unalienable rights is given full hearing. There are many other social concerns which intrinsically relate to the concept of same-sex marriage, and they have been oft debated. But unalienable rights is the most foundational concern of all, and thus far, it has not been reviewed by a court of law. Our nation is founded upon unalienable rights and its known historical Source. Are we willing to risk losing

such a bequeathal? I make my appeal for you to issue an immediate stay upon the *Goodridge* decision accordingly. Thank you.

Most sincerely,

*John E. Rankin*

Rev. John C. Rankin